[No. B009724. Second Dist., Div. One. Sept. 23, 1987.]

DUANE J. DWYER et al., Plaintiffs, Cross-defendants and Appellants, v.
CROCKER NATIONAL BANK, Defendant, Cross-complainant and Respondent;
ELEANOR LAUN, Defendant and Respondent;
FOREMOST INSURANCE COMPANY, Cross-complainant and Respondent;
MOTOR HOLIDAYS, LTD., Cross-defendant and Appellant;
LON B. ISAACSON, Appellant.

**COUNSEL**

Dennis A. Fischer Michael Heumann, Marer, Marer & Schuck and Gerald Z. Marer for Plaintiffs, Cross-defendants and Appellants and for Cross-defendant and Appellant and for Appellant.

Zobrist & McCullough, Zobrist, Vienna & McCullough, Burton V. McCullough and Martin J. Roth for Defendant, Cross-complainant and Respondent and for Defendant and Respondent and for Cross-complainant and Respondent.

**OPINION**

**WOODS, J.\*** —

I

INTRODUCTION

This is an appeal by plaintiffs, cross-defendants and appellants herein, Duane J. Dwyer and Motor Holidays, Ltd., a California corporation and cross-defendant and appellant herein, Motor Holidays, Ltd., a Delaware corporation, from a judgment entered on a cross-complaint upon verdict, by the Los Angeles County Superior Court, the Honorable Carlos E. Velarde, judge presiding, in the amount of $78,500 in compensatory damages and $100,000 in punitive damages. The judgment on the cross-complaint was entered in favor of cross-complainant and respondent herein, Foremost Insurance Company, a corporation.

This appeal is also taken from the order of Judge Carlos E. Velarde, made following the verdict and after a three-day hearing, wherein sanctions were imposed against the aforementioned appellants and their attorney, Lon B. Isaacson, also an appellant herein, in the additional amount of $75,258 pursuant to Code of Civil Procedure[1] section 128.5, in favor of the respondents herein.[2]

The appeal is timely.

---

\* Assigned by the Chairperson of the Judicial Council.

[1] All future references to the Code of Civil Procedure will be designated CCP § .

[2] In the interest of brevity, Dwyer will hereafter refer to plaintiff/cross-defendant/appellant, Duane J. Dwyer; M.H.'s-Cal. will hereafter refer to plaintiff/cross-defendant/appellant, Motor Holidays, Ltd., a California corporation; M.H.'s-Del. will hereafter refer to cross-defendant/appellant, Motor Holidays, Ltd., a Delaware corporation; Isaacson will hereafter refer to appellant, Attorney Lon B. Isaacson; Crocker will hereafter refer to defendant/cross-complainant/respondent, Crocker National Bank, a national banking corporation; Laun will hereafter refer to defendant/respondent, Eleanor Laun; and Foremost will hereafter refer to cross-complainant/respondent, Foremost Insurance Company, a corporation.

With frequency in this opinion, it is unnecessary to distinguish between Motor Holidays, Ltd., a California corporation and Motor Holidays, Ltd., a Delaware corporation, therefore, in those instances both corporations will be referred to in the generic as "Motor Holidays" where facility will best be served. Similarly, the court below on numerous occasions referred to both corporations in the generic sense for purposes of facility and such references made by the trial court will likewise be indicated in the manner discussed above.

## II

### Synopsis of Procedural History

On December 29, 1981, Dwyer and M.H.'s-Cal. filed their complaint in the Los Angeles County Municipal Court for compensatory and punitive damages, alleging six causes of action against Crocker and Laun, a vice president of Crocker at the Fallbrook Square office. The complaint was filed following a setoff by Crocker against an account in the name of "Motor Holidays" in the amount of $3,541.93, necessitated when Crocker discovered that a check from Foremost in the same amount, made payable to payees "Montieth Lee Bolin and Bank of America," was endorsed solely by Dwyer without authorization and deposited into the "Motor Holidays" account.

On February 23, 1982, Crocker and Foremost filed a cross-complaint against Dwyer, M.H.'s-Cal., and M.H.'s-Del., seeking compensatory and punitive damages on five theories of relief sounding in declaratory relief, fraud and deceit, negligent misrepresentation, an accounting and constructive trust. The cross-complaint contained allegation that a draft issued by Foremost in the amount of $3,541.93 was endorsed by Dwyer for "Motor Holidays" under false pretenses and that the proceeds of the draft belonged to the named payees, Bank of America and one Montieth Lee Bolin, lien holders on a motor home, for repairs to the motor home by "Motor Holidays," named the "Captain Lee." The cross-complaint contained further allegations that "Motor Holidays" had already been paid for the repairs by reason of a prior insurance claim to Canadian Indemnity Insurance Company for the same damages.[3]

On July 14, 1982, the Honorable Sara K. Radin imposed sanctions against Dwyer, individually and as an officer of "Motor Holidays," for failure to comply with discovery initiated by Crocker, Foremost and Laun and supervised by the appointed special referee, retired Superior Court Judge Sidney Kaufman. Judge Radin's order prohibited Dwyer or any officer of "Motor Holidays" from introducing evidence at trial, or by motion to support or oppose designated claims or defenses relating to Dwyer's refusal to render discovery.

---

[3]On May 26, 1982, three cases were consolidated for trial pursuant to stipulation under case No. C352416. The other two cases were numbered C352885 and NWC 85795. Cases numbered C352416 and C352885 involved one Dorothy Lee Haynes and others in a contest against Dwyer for control of "Motor Holidays." Case No. NWC 85795 involved the parties to this litigation and this appeal. Judge Velarde granted a severance motion at trial and this case was tried under case No. NWC 85795.

At time of trial, the Honorable Carlos E. Velarde refused to alter or amend the order of Judge Sara K. Radin, and Dwyer and "Motor Holidays" were precluded from offering evidence on their complaint and on their defenses to the cross-complaint.

Further, Judge Carlos E. Velarde imposed additional sanctions under CCP § 128.5[4] in the amount of $75,258, as attorneys fees and costs, to Foremost, Crocker and Laun, which were ordered to be paid one-half by Dwyer and "Motor Holidays," and one-half by their Attorney Lon B. Isaacson who was made jointly and severally liable with Dwyer and "Motor Holidays" for payment of the latter one-half of the sanctions.

### III

### ISSUES

Appellants raise the following issues on appeal:

1. Judge Sara K. Radin's order limiting Dwyer's testimony at trial as a discovery sanction, following Dwyer's invocation of the Fifth Amendment privilege against self-incrimination at his deposition before Special Referee and retired Judge Sidney Kaufman, and following Dwyer's refusal to produce documents, was erroneous.

2. Judge Carlos E. Velarde erroneously imposed sanctions against Dwyer and his counsel following the trial for an alleged series of frivolous actions and bad faith tactics, designed to allegedly cause delay or hinder the attempts of the opposing parties to present their case.

---

[4] CCP § 128.5 provides as follows: "(a) Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. This section also applies to judicial arbitration proceedings under Chapter 2.5 (commencing with Section 1141.10) of Title 3 of Part 3.

"(b) For purposes of this section:

"(1) 'Actions or tactics' include, but are not limited to, the making or opposing of motions or the filing and service of a complaint or cross-complaint. The mere filing of a complaint without service thereof on an opposing party does not constitute 'actions or tactics' for purposes of this section.

"(2) 'Frivolous' means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party.

"(c) Expenses pursuant to this section shall not be imposed except on notice contained in a party's moving or responding papers; or the court's own motion, after notice and opportunity to be heard. An order imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying the order.

"(d) The liability imposed by this section is in addition to any other liability imposed by law for acts or omissions within the purview of this section."

3. Appellants did not receive sufficient notice of the grounds and the extreme amounts sought and subsequently awarded by the trial court in sanctions under CCP § 128.5.

4. Respondents raise as their sole issue on appeal, respondents' entitlement to a monetary award for fees and costs on the theory that appellants have prosecuted a frivolous appeal.

## IV

### Facts

The facts pertinent to the issues raised in this appeal and construed in the light most favorable to the judgment and orders of the trial court (*People* v. *Johnson* (1980) 26 Cal.3d 557, 558 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]) are as follows:

During the month of February 1982, Dwyer, through his counsel, Isaacson, stipulated in writing that Dwyer's deposition would be taken by counsel for Crocker and Laun. The stipulation further provided that "Motor Holidays" and Dwyer would produce documents set forth in the notice to produce at the deposition. At Dwyer's deposition in March 1982, Dwyer refused to produce the documents set forth in the notice to produce and refused to answer questions concerning his insurance claims and practices, on the grounds that his answers might incriminate him and Dwyer invoked his Fifth Amendment privilege not to testify. At the third session of Dwyer's deposition, Dwyer indiscriminately produced all of his business records, without regard to whether they pertained to the lawsuit or not. Many files were unrelated to the litigation then in progress and one was even labeled "junk." One file produced by Dwyer was purportedly the "Captain Lee" file which pertained to the motor home involved in the litigation. However, key documents were missing from the file.

After the aborted deposition of Dwyer and pursuant to order of court dated May 26, 1982, the instant action was consolidated with two other actions principally concerned with ownership and control of "Motor Holidays." Consolidation was sought and agreed to by all defendants in an effort to conserve expenses and save the court the time and cost of hearing overlapping claims. (See fn. 3, *ante.*)

On June 10, 1982, in Department 81 of the Los Angeles County Superior Court, Judge Sara K. Radin made an order appointing retired Superior Court Judge Sidney Kaufman as a special referee to supervise discovery and to make a report to the court. Judge Kaufman was appointed to attend and

supervise the deposition of Dwyer, and Dwyer was ordered to pay the cost of the referee in advance at the beginning of each deposition session. Dwyer failed to pay the referee's fees and asserted that he was without funds with which to make payment. During the course of the trial, however, this assertion proved to be false and Dwyer's ability to pay was confirmed when Dwyer's accountant, one Harry Olds, testified that Dwyer earned $6,000 to $7,000 a month. Judge Radin imposed additional discovery sanctions against Dwyer in the amount of $1,260, which Dwyer also persisted in refusing to pay until Trial Judge Velarde ordered him again to make payments following the testimony of his accountant.

At one deposition session, Dwyer was ordered by the referee, Judge Kaufman, to produce the "Captain Lee" file. Dwyer failed to produce the file and claimed that it had been lost or misplaced. Dwyer's explanation surrounding the disappearance of the "Captain Lee" file essentially was that the attorneys for the deposing parties were given a brief opportunity to review his files concerning insurance claims and financial information in his attorney's office, after which the file was missing. The deposing attorneys maintained that, in spite of promises that the files would remain intact, when the attorneys later returned to complete their inspection, the files had been significantly disturbed. All insurance claims files were missing and many financial files were mislabled. Although Dwyer subsequently did produce some of the documents he had apparently removed from the files, he continued to fail to produce the "Captain Lee" file, insisting that the deposing attorneys had removed the files from his counsel's office, a fact which the attorneys vigorously denied under oath.

At another session of Dwyer's deposition, before the referee, Judge Kaufman, Dwyer refused to answer any questions regarding "Motor Holidays" claims unless ordered to do so by Judge Kaufman. Judge Kaufman cited Dwyer for contempt for refusal to be deposed and on July 14, 1982, Judge Radin, among other things, entered an order, which was modified on August 5, 1982, pursuant to the granting of a motion for reconsideration, to read as follows: "Pursuant to Code of Civil Procedure section 2034, plaintiff and cross-defendant, Duane J. Dwyer, individually or as an officer of Motor Holidays, Ltd., is prohibited from introducing evidence at trial or by motion to support or oppose designated claims or defenses to which his refusal to answer questions or produce documents whether by invoking the Fifth Amendment privilege or otherwise relate [*sic*]."

Subsequently, neither Dwyer nor Isaacson appeared at the mandatory settlement conference and sanctions were imposed against Isaacson personally for failure to appear. A second mandatory settlement conference had to

be set and conducted, which proved to be wasteful of time and expense in view of Dwyer's refusal to engage in meaningful settlement negotiations.

In October 1982, the trial commenced before Judge Carlos E. Velarde, at which the following events unfolded:

Judge Velarde granted a defense motion for directed verdicts on the complaint of Dwyer and M.H.'s-Cal. and the trial of the cross-complaints proceeded by way of jury trial. Dwyer, allegedly without the knowledge of his counsel, Isaacson, served a subpoena on the guardian ad litem for a 12-year-old son of the opposing counsel, who represented Dorothy Lee Haynes in the two related consolidated actions before severance of these actions at time of trial. The purported purpose of the subpoena was to inquire into an alleged prostitution business conducted out of that attorney's office by one of his employees. Facts revealed that the employee about whom Dwyer sought evidence did not work for Haynes's attorney and was unknown to him. Judge Velarde was "troubled" by the tactic of subpoenaing a 12-year-old son of opposing counsel.

Judge Velarde admonished Isaacson in chambers, and several times during the course of the trial, about his witnesses making racial comments or using vulgar or inflammatory language in front of the jury. During the trial, several witnesses called on behalf of Dwyer made inflammatory and vulgar comments before the jury. Attorney Isaacson, although admonished to advise witnesses to comply with the court's instructions, failed to properly admonish his witnesses.

During the course of the trial, Crocker and Laun filed and served a notice of request for attorneys' fees and expense pursuant to CCP § 128.5. The motion sought reasonable expenses and attorneys' fees, on the ground that the complaint against Crocker and Laun was not filed in good faith, was frivolous and caused unnecessary expense and consumption of time. A discussion occurred in-chambers on the day of the filing of the notice, during which session Judge Velarde indicated that a hearing on the motion under CCP § 128.5 would be heard at the end of the jury trial. Judge Velarde indicated that he would examine and review the entire record in a cumulative fashion pertaining to costs, expenses and attorneys' fees. Isaacson, on behalf of himself, requested the court to conduct such a full sanctions hearing at the conclusion of the trial.

While the trial was in progress, Dwyer delivered a mailgram to the president and to each member of the board of directors of Foremost entitled "Direct Settlement Offer" which stated in part: ". . . It appears that the individuals intrusted to settle on your company[']s behalf are devoid of

business economics and are more inclined and insistent to continue to spend your money and mine like drunken sailors. The trial is estimated to take between thirty and forty days to conclusion. [¶] Foremost pecking order is last on the agenda. I interpret this in dollars of cost to your company from $40,000.00 to $60,000.00 in addition to the staggering cost already incurred."

The mailgram continued by threatening a malicious prosecution suit against the company and also every field adjuster and claims manager. The mailgram threatened a "Royal Globe" suit for bad faith in failing to pay claims which would result in an order of compensatory damages which could exceed $100,000 and a "hefty" punitive damage award "perhaps in excess of the one recently levied against 20th Century Insurance Company." Isaacson admitted to Judge Velarde at the hearing that he was aware that the mailgram had been sent before the matter was discussed with the court.

Attorney Isaacson had been previously admonished by the disciplinary committee of the State Bar on the subject of direct contacts with an opposing party without the knowledge and consent of counsel for the party. During the course of the trial, Dwyer was likewise admonished by the court for contacting an attorney for Foremost at his home, although the attorney was not active in the present litigation.

During trial, Isaacson was cited by the court for being late on three different instances during a 48-hour period.

During the trial, Judge Velarde frequently admonished Isaacson to refrain from the use of leading questions on direct examination which Isaacson in turn disregarded on at least 10 occasions.

Dwyer persistently violated Judge Velarde's admonishments prohibiting him from volunteering information beyond the scope of the questions directed to him. Dwyer disregarded the admonitions and continued to volunteer unsolicited information in front of the jury.

In support of their cross-complaint, Foremost and Crocker adduced testimony of 11 witnesses which demonstrated improper insurance claims procedures by Dwyer and "Motor Holidays" and tendered evidence to prove "double dip" claims[5] on motor homes rented to witnesses Russ McClellan, Alan Roger Hughes, Hugh Bullion, and Brandon Singh. Additional evi-

---

[5] In the insurance industry, multiple payments for a single incident are known as "double dips."

dence was adduced to prove inflated claims and false claims as a pattern of illegal conduct of the kind alleged in this lawsuit.

At the completion of the case in chief of Foremost and Crocker on their cross-complaint, Dwyer attempted to recant his position with regard to his claim of privilege under the Fifth Amendment and sought to testify. Dwyer also sought to terminate the trial and commence discovery anew. The trial court denied Dwyer's request. A petition for writ of mandate from the court of appeal was also sought but denied.

In anticipation of the completion of the trial, Foremost, Crocker and Laun submitted additional papers and documents clarifying their claims with regard to sanction under CCP § 128.5 and served copies on Isaacson on behalf of Dwyer, individually, and on behalf of "Motor Holidays." At the conclusion of the trial, Judge Velarde admonished all counsel in chambers that the CCP § 128.5 hearing would be heard immediately after the trial. Judge Velarde instructed all parties to present to the court any papers or documents they wished to have considered by the court and to bring any witnesses to the hearing that they wished to have testify.

Isaacson indicated to the court that he would not prepare for the hearing in that he had planned to take the ensuing weekend off as a vacation. Isaacson then requested a continuance on the first day of the hearing which was denied. Attorney Jerome Weber then made a special appearance on behalf of Isaacson to move to continue the matter which was also denied. The court indicated that Isaacson had notice and opportunity to prepare for the hearing while the jury was deliberating but chose not to do so.

At the in-chambers conference and prior to the CCP § 128.5 sanctions hearing, Foremost, Crocker and Laun submitted documentary evidence setting forth $151,000 in attorneys' fees and costs incurred throughout the litigation. The attorneys incurring the fees and costs either testiffed at the hearing or were available to do so.

Counsel for Crocker, Foremost and Laun also testified and reviewed the bad faith tactics employed by Dwyer and Isaacson throughout the litigation and detailed the facts pertaining to their billing procedures.

At the conclusion of the hearing, the court imposed sanctions as set forth below. A nunc pro tunc minute order of Judge Velarde dated March 7, 1983, provided as follows: "IT IS HEREBY ORDERED that Duane J. Dwyer and Motor Holidays, Ltd., pay to Crocker Bank, Eleanor Laun and Foremost Insurance Company reasonable expenses of $75,258.00 and that Lon B. Isaacson pay to Crocker Bank, Eleanor Laun, and Foremost Insurance

Company one-half ($37,629) of said amount. Said $37,629.00 shall not be in addition to the $75,258.00, but Duane J. Dwyer and Motor Holidays, Ltd., and Lon B. Isaacson shall be jointly and severally liable for said $37,629.00." The court had previously signed a 26-page order, dated February 25, 1983, detailing and reviewing the conduct on which sanctions were based, entitled "Order Imposing Sanctions Pursuant to Section 128.5 of the Code of Civil Procedure and Finding by the Court Justifying Said Order."

As a result of the cumulative effect of the conduct of Dwyer and his counsel, Isaacson, the court stated: "In all its years of experience, the court has not observed the flagrant and intentional violation of court orders and improper conduct demonstrated by Dwyer, Motor Holidays, and Isaacson in this trial. The complaint filed by Dwyer and Motor Holidays against Crocker Bank and Laun was conceived and filed in bad faith and with an intent to unjustifiably extort an unmerited settlement or a fraudulent award of compensatory and punitive damages against those innocent parties. The lawsuit was pursued to discovery and through trial in bad faith. Not only did Crocker Bank and Mrs. Laun suffer as a result of the action and complaint, but Foremost also suffered as a result of the unreasonable and patently frivolous defenses, including dilatory and bad faith tactics, engaged in by Dwyer and Isaacson."

V

DISCUSSION

1.

*Propriety of Judge Sara Radin's discovery order.*

Judge Radin, in her minute order of July 14, 1982, imposing sanctions under CCP § 2034, prohibited Dwyer, individually or as an officer of "Motor Holidays" from "introducing evidence at trial or by motion to support or oppose designated claims or defenses to which [Dwyer's] refusal to answer questions or produce documents whether by invoking [the] Fifth Amendment privilege or otherwise relate[d]."

Additionally, the order of Judge Radin imposing sanctions was the result of Dwyer's failure to produce documents at his deposition, including but not limited to the contents of the "Captain Lee" file. Judge Radin's order was entered following a noticed hearing during which Dwyer was found to have invoked his Fifth Amendment self-incrimination privilege to questions asked of him at his deposition pertaining to false insurance claims. Dwyer

contended that his answer could expose him to criminal prosecution under selected provisions of the California Insurance Code.

■ In urging this court to find an abuse of discretion by Judge Radin, appellants rely heavily on the case of *Pacers, Inc.* v. *Superior Court* (1984) 162 Cal.App.3d 686 [208 Cal.Rptr. 743], which they contend supports their argument that the trial court should have employed a less stringent course of action in imposing sanctions by staying the trial proceedings until the statute of limitations had run on the crimes to which Dwyer was exposed.

It should be noted, however, that the *Pacers* case involved a "defendant" who was "involuntarily" in court and who invoked his right against self-incrimination. The instant case, of course, is the reverse situation. Plaintiffs, Dwyer and M.H.'s-Cal., were seeking damages against the defendants, Crocker and Laun, while at the same time invoking the self-incrimination privilege (sought to be withdrawn by Dwyer deep in the trial process) to inconvenience and hinder involuntary defendants from presenting their defenses and prosecuting their cross-complaint against the plaintiffs and cross-defendants.

■ The self-incrimination privilege has been extended to civil trials and administrative hearings, as well as traditionally being applied in criminal cases. (*Pacers, Inc.* v. *Superior Court, supra,* 162 Cal.App.3d 686; *Kastigar* v. *United States* (1972) 406 U.S. 441, 444 [32 L.Ed.2d 212, 216-217, 92 S.Ct. 1653].) However, the courts have never allowed a plaintiff to use, in the words of the trial judge in this case, Carlos E. Velarde, the self-incrimination privilege as a "shield and as a sword." The courts have prevented the plaintiff in such a situation from "blow[ing] hot and cold." (*A & M Records, Inc.* v. *Heilman* (1977) 75 Cal.App.3d 554, 566 [142 Cal.Rptr. 390].)

■ Also, the courts have been quick to find a waiver of the privilege when a plaintiff seeks damages on the one hand and then attempts to inconvenience or hinder or delay the defense in the prosecution of its case by the imposition of a privilege. (*People* v. *Preyer* (1985) 164 Cal.App.3d 568, 572 [210 Cal.Rptr. 807].)

■ It should be noted that Judge Radin did in fact follow a less strenuous path in imposing sanctions against plaintiffs for failure to render discovery, in that CCP § 2034 authorizes the dismissal of an action or the striking of pleadings as ultimate sanctions where there has been an improper failure of a litigant to comply with the discovery act. However, Judge Radin did not follow this harsh path, but in the alternative prohibited appellants from introducing evidence at time of trial relating to Dwyer's

·invoking of the Fifth Amendment privilege against self-incrimination and relating to his failure to produce documents.

■ Judge Radin's course of action was also proper in refusing to enter a stay of proceedings until any threatened criminal prosecution against Dwyer would expire by reason of the running of the applicable criminal statutes of limitation. In this instance, it appears that the most likely statute of limitations pertaining to the crime, which might have supported a criminal prosecution against Dwyer, was for three years (i.e., insurance fraud per Ins. Code, § 556 and Pen. Code, § 800). Possibly the five-year statute of limitations under the United States mail fraud statute would be applicable (18 U.S.C. §§ 1341, 1961; *United States* v. *Bethea* (5th Cir. 1982) 672 F.2d 407; *United States* v. *Boffa* (D.Del. 1980) 513 F.Supp. 444). If such a stay had been ordered by Judge Radin, then there is a distinct probability that the period of time within which to bring the cross-action to trial would have expired. (Five years from filing under former CCP § 583, now § 583.310.)

This court finds no error in the discovery sanctions imposed by Judge Radin pursuant to CCP § 2034, nor with Judge Velarde's enforcement of the order of Judge Radin at time of trial.

■ The record reveals that Judge Radin also had additional reasons and independent grounds for her discovery order under CCP § 2034. During the discovery stage of the litigation, Crocker and Foremost served "requests for admissions" on Dwyer and "Motor Holidays," to which Dwyer and "Motor Holidays" failed to respond. Pursuant to CCP § 2033, the requested admissions were deemed admitted by Dwyer and "Motor Holidays."

By the "admissions," Dwyer and "Motor Holidays" conclusively proved that Dwyer did not have title to the proceeds of the Foremost draft which Crocker had "setoff"; that Dwyer and "Motor Holidays" had fraudulently submitted two claims for the same alleged accident; that without authorization Dwyer endorsed the draft and had it deposited with Crocker; and that Dwyer and "Motor Holidays" had impermissibly engaged in a double-dip scheme.

The "admissions," combined with other trial evidence of Dwyer's false, exaggerated and other double-dip claims, clearly establish that the judgment against Dwyer and "Motor Holidays," and the directed verdicts for Crocker, Foremost and Laun, should stand on independent grounds.

### 2.

*Propriety of Judge Carlos E. Velarde's sanctions order following trial.*

██ Appellants next contend that Judge Velarde abused his discretion by awarding to respondents the sum of $75,258 as attorneys fees and costs in the action. ██ The award by Judge Velarde was pursuant to CCP § 128.5 which was enacted by the Legislature for the purpose of preventing frivolous litigation. (See fn. 4, *ante.*) CCP § 128.5 supplements already existing authority of the trial court to exercise supervisory powers to prevent ill-conceived litigation and tactics. Quoting from *Mungo v. UTA French Airlines* (1985) 166 Cal.App.3d 327, 333 [212 Cal.Rptr. 369]: " ' 'A trial court is empowered to exercise its supervisory power in such a manner as to provide for the orderly conduct of the court's business and to "guard against inept procedures and unnecessary indulgences which would tend to hinder, hamper or delay the conduct and dispatch of its proceedings." ' ' "

As previously noted the monetary sanctions imposed by Judge Velarde were apportioned and imposed among the appellants, Dwyer, "Motor Holidays" and their counsel and appellant, Isaacson, albeit only one-half of the amount requested by respondents ($151,000).

██ We cannot say that Judge Velarde abused the broad discretion accorded him by the Legislature by imposing the sanctions mentioned, *ante,* in view of the findings of the trial judge summarized by this court as follows:

(1) Filing of a frivolous action in the face of at least two notices that the claim had no basis in fact;

(2) Failure to produce documents;

(3) Production of documents in such a manner as to be time consuming by containing irrelevancies and randomized papers;

(4) Failure of Dwyer to timely pay court-ordered referee's fees to Judge Kaufman when he had the ability to pay the fees in the face of his denial;

(5) Failure to produce the "Captain Lee" file;

(6) Failure of Dwyer to timely pay other court-imposed monetary sanctions when, in fact, he was found to have had the ability to do so at the time Judge Radin ordered sanctions of $1,260;

(7) Failure to appear at the mandatory settlement conference;

(8) Improper use of a trial subpoena by outrageously serving it on a 12-year-old son of opposing counsel;

(9) Extensive tardiness at trial;

(10) By asking leading questions in spite of court admonitions to refrain from using that form of question on direct examination;

(11) Bad faith volunteering of testimony at trial, which exceeded the scope of direct and cross-examination, in spite of court admonitions to the contrary;

(12) By sending a "settlement" mailgram during trial bordering on extortion;

(13) Use of inflammatory, vulgar and racist testimony through trial witnesses in spite of the admonition of the trial court to curtail such testimony; and

(14) Inconsistent testimony by Dwyer at the CCP § 128.5 hearing, bordering on perjury, to the effect that at the time Dwyer filed his complaint in the municipal court, he had no knowledge that the endorsements of Lee Bolin and Bank of America were required on the draft, which is in direct contradiction to earlier sworn testimony by Dwyer at his deposition.

We cannot say that Judge Velarde abused his discretion in imposing the sanctions as indicated, *ante,* pursuant to CCP § 128.5.

3.

*Alleged insufficiency of the notice of hearing pursuant to CCP § 128.5.*

■ Appellants next contend that they were not given adequate notice and full opportunity to be heard at the CCP § 128.5 sanctions hearing since the grounds and the amount of the sanctions requested were not set forth with specificity.

CCP § 128.5 does set forth the amount of specificity required for imposition of sanction.

In *Lesser* v. *Huntington Harbor Corp.* (1985) 173 Cal.App.3d 922, 932 [219 Cal.Rptr. 562], while examining prior cases dealing with notice requirements under CCP § 128.5, the court indicated that the adequacy of the notice thereunder should be determined on a *case by case* basis to satisfy basic due process requirements.

Judge Velarde, in his comments on October 20, 1982, made the following observations: "The issue of sanctions and attorneys' fees, I'm going to take that under submission and I will take it up at the appropriate time. [¶] . . . [¶] Let me just say that I'll do the same as to any other motions that call for sanctions and attorney fees. [¶] . . . [¶] I'm not overlooking it. We just simply have a lot of other matters and I take it we'll have some time between now and the conclusion of the trial, if not immediately following the conclusion of trial, to take up any motions for payment of attorneys' fees, sanctions, and so forth."

The court further indicated in its order on that same day that "the entire record of the case would be examined and reviewed by the court in a cumulative fashion."

Thereafter, the subject of sanctions was discussed many times during the course of the trial when sanctionable events occurred. Even appellant, Isaacson, requested the court to carry out the procedure that had already been indicated by the court and conduct a full sanctions hearing at the conclusion of trial rather than as each event occurred. Isaacson stated: "So I would like the court to just hold in abeyance all sanction, rulings—you have already done that—with regard to these motions until the end of the trial and make such rulings as you determined."

Additionally, the court stated, in its orders of February 25, 1983, that throughout the trial it had indicated that certain actions or tactics would be subject to the hearing under CCP § 128.5 following the conclusion of the trial. In its findings following the hearing, the court indicated that it had "advised counsel during the trial that the court would consider all evidence and instances of misconduct during the trial as evidence that the court might consider at the section 128.5 motion to be held immediately after the trial concluded."

Further notice was provided to appellants, when, on December 14, 1982, Foremost, Crocker and Laun filed and served a "Declaration of Russell B. Hicks in support of attorney's fees pursuant to California Code of Civil Procedure section 128.5," which detailed a request for $151,000 in fees and costs.

Finally, the court indicated, on December 17, 1982, following the discharge of the jury, again during a chambers conference, with all counsel being advised, including Isaacson, that it intended to commence its CCP § 128.5 hearing the following Monday morning. According to the court, at that time it further advised all counsel to be prepared with any moving or opposing papers which they desired to bring to the court's attention, to bring any exhibits they wished admitted and to have present any witnesses they intended to call to present testimony. Finally, the court observed that it remembered Isaacson declaring in a chambers conference that Isaacson intended to spend the intervening weekend resting out of the city.

We, therefore, hold that sufficient notice of the CCP § 128.5 sanctions hearing was duly given. It is clear that Dwyer and Isaacson knew for an extended period of time that a sanctions hearing was upcoming. They also knew what relevant subjects and categories of bad faith conduct would be examined at the hearing. They also had ample opportunity to prepare as the trial came to a close, particularly during jury deliberation, but failed to do so.

Likewise, the amount of attorney's fees and expenses to be awarded was in the sound discretion of the trial court and this court finds no abuse of discretion in awarding sanctions of $75,258 apportioned in the manner heretofore described.

This court further finds no merit in appellants' contention that an award pursuant to CCP § 128.5 would be improper for conduct occurring prior to January 1, 1982, the enactment date of CCP § 128.5. On the date that sanctions were imposed by Judge Velarde, CCP § 128.5 had been in full force and effect for approximately one year. Additionally, Judge Velarde awarded sanctions in an amount which was one-half the amount requested by respondents according to their proof. It is highly probable that this reduction of the requested award by one-half more than compensated for any alleged conduct occurring prior to enactment of CCP § 128.5.

Even more unsound is appellants' second theory that Foremost and Crocker could not recover sanctions for any period of time prior to the filing of the complaint in the municipal court. However, Crocker and Laun (and Foremost) eventually became embroiled in the litigation directly as a result of bad faith tactics by Dwyer in his litigation with "Haynes" and others during which the unsoundness of Dwyer's claim against Crocker and Laun first came to light. The statute is clear that costs and fees can be awarded to parties in the position of Crocker and Laun by reason of bad faith conduct, including the bad faith filing of a complaint. Even though Foremost and Crocker were not parties to the action with "Haynes" and others involving control of "Motor Holidays," they undeniably became

parties to the present action by reason of the bad faith actions of the appellants, the related actions thereby entitling them to fees unnecessarily incurred relating to the present litigation.

 Isaacson argues that any conduct on his part warranting sanctions is difficult to determine and to attribute to him, or as Isaacson expresses it, as "falling at the feet of" Isaacson. However, there are many clear examples of bad faith conduct that can be directly traced to Isaacson. Isaacson did use incessant leading questions at time of trial in the face of Judge Velarde's admonishment. He was late on several occasions and failed to appear at the mandatory settlement conference. Isaacson was aware of Dwyer's improper trial conduct and implicitly condoned the conduct by failing to prevent Dwyer's use of inflammatory testimony and to prevent vulgar and racist language by witnesses as admonished by Judge Velarde. Isaacson also had knowledge of the sending of the mailgram by Dwyer, which bordered on extortion. Isaacson also participated in the filing of a complaint that itself had no meritorious basis in law or fact. The trial court did not abuse its discretion in ordering that sanctions be paid by Attorney Isaacson in the amount of $37,629.

The burden is on Isaacson to establish the abuse of the trial court's discretion and he has plainly failed to carry his burden of proof. (*Mission Imports, Inc.* v. *Superior Court* (1982) 31 Cal.3d 921 [184 Cal.Rptr. 296, 647 P.2d 1075].)

 The appellants next contend that the superior court made computational errors pertaining to its calculation of the amount of sanctions for attorneys' fees. It should be noted that in the matter of an award of attorneys fees under CCP § 128.5, the court is not bound in its determination by such traditional factors as hours consumed, statements mailed, results attained, and the like. Such an award for attorneys fees is not the subject of a "strict accounting" as might be required in other areas of the law such as in the administration of trusts and estates. Although the court might be aided by such evidence, the court is an "expert" on the subject of attorneys fees and needs no expert testimony on the matter for it to make a determination of a reasonable attorneys fees award. (*Bunn* v. *Lucas, Pino & Lucas* (1959) 172 Cal.App.2d 450, 468 [342 P.2d 508].) This is particularly so when the trial judge is the one who makes the award based upon proceedings before him and from facts which are extant in the court files. That is not to say that an expert in this field is necessarily precluded, however. This point on appeal is without merit. We find no abuse of discretion on the part of the trial court in awarding sanctions of $75,258 under CCP § 128.5.

This court has read and considered the issues raised by respondents on this appeal as to appellants' "unclean hands" and by reason of the opinion

set forth herein on legal grounds, we find it unnecessary to address ourselves to the equitable doctrine of unclean hands.

4.

*Respondents' request for sanctions for an alleged frivolous appeal.*

We come now to the final matter to be determined on this appeal, namely, respondents' request for sanctions for an alleged frivolous appeal by appellants pursuant to CCP § 907.

We look to the 1982 opinion of the California Supreme Court (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179]) for our standard in considering respondents' request.

In *Flaherty,* appellate courts are admonished that "an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.] [¶] However, any definition must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions. Counsel should not be deterred from filing such appeals out of a fear of reprisals. Justice Kaus stated it well. In reviewing the dangers inherent in any attempt to define frivolous appeals, he said the courts cannot be 'blind to the obvious: the borderline between a frivolous appeal and one which simply has no merit is vague indeed . . . . The difficulty of drawing the line simply points up an essential corollary to the power to dismiss frivolous appeals: that in all but the clearest cases it should not be used.' [Citation.] The same may be said about the power to punish attorneys for prosecuting frivolous appeals: the punishment should be used most sparingly to deter only the most egregious conduct." (*Id.,* at pp. 650-651, italics in original.)

Viewed under the standard of *Marriage of Flaherty,* this court is hardpressed to find that the appeal in this instance was anything but a calculated effort to "harass the respondent or delay the effect of an adverse judgment." We further find that it is indisputable that this appeal "has no merit" and "any reasonable attorney would agree that the appeal is totally and completely without merit."

We, however, find that sanctions are more appropriately imposed in this case under rule 26 of the California Rules of Court which provides in part: "Where the appeal is frivolous or taken solely for the purpose of delay . . . the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."

## VI

### DISPOSITION

The judgment and order appealed from are affirmed in all respects. In addition to normal costs on appeal, sanctions are imposed under rule 26 of the California Rules of Court against appellants Dwyer, M.H.'s-Cal., M.H.'s-Del. and Isaacson, jointly and severally, and in favor of respondents Crocker, Foremost and Laun in the sum of $10,000.

Spencer, P. J., and Lucas, J., concurred.

The petition of all appellants for review by the Supreme Court was denied December 16, 1987.