[Nos. G005421, G006470, G006473. Fourth Dist., Div. Three. Mar. 14, 1990.]

AYDEL R. LLAMAS et al., Plaintiffs and Appellants, v.
ALICIA DIAZ et al., Defendants and Respondents;
SOUTHERN PACIFIC TITLE COMPANY et al., Defendants and Appellants.

[Opinion certified for partial publication.[1]]

---

[1] Pursuant to California Rules of Court, rule 976(b), parts II-VIII are not published as they do not meet the standards for publication.

## COUNSEL

Rashida Jaffer for Plaintiffs and Appellants.

William E. Gummerman and William A. Hinz for Defendants and Appellants.

Michael J. Molloy and Carlos A. Cuesta for Defendants and Respondents.

## OPINION

**SONENSHINE, J.**—Aydel, Jaime and Cain Llamas appeal the dismissal of their causes of action against the defendants after the court granted a nonsuit at the close of plaintiffs' case.[2] The Llamases contend the evidence

[2] The defendants are Duskin and Francis Keller, the original sellers of the subject property; Alicia Jason, also known as Alicia Diaz (hereafter Jason), the Llamases' real estate agent, and her husband; Diaz Enterprises, with whom Jason was associated; and Southern Pacific Title Company.

was sufficient to allow them to proceed and they were generally denied a fair trial. They also object to (1) sanctions imposed upon them for failure to appear at a deposition, and (2) the issuance of a protective order in response to their request for production of documents. Southern Pacific Title Company (SoPac) and Keller appeal the denial of their posttrial request for sanctions.

## I

Only those facts pertinent to the published portion of this opinion will be presented here. In 1978 Aydel Llamas purchased a residence in Santa Ana from Duskin Keller. The sale was consummated through the auspices of real estate agent Alicia Jason, who also loaned Aydel cash toward the down payment. The amount was later memorialized by a promissory note and third trust deed on the property. Payments on Keller's note, secured by a second trust deed on the property, were erratic. He first instituted foreclosure proceedings in October 1979; the action was subsequently cancelled.

In 1981, Keller again began foreclosure through SoPac, as trustee. In November, Jason paid the amounts in default to Keller. She then initiated her own foreclosure through SoPac in December. The Llamases failed to timely reinstate the loan or purchase at the sale.

In May 1982, the Llamases filed suit against SoPac and Jason, claiming fraud in the foreclosure process. By amended complaint, Keller and Jason were included as defendants in causes of action for fraudulent failure to disclose.

The matter proceeded to trial. At the close of plaintiffs' case, motions for nonsuit by Jason, Keller and Diaz were granted as to those causes of action relating to the original sale of the residence. The court found no evidence to support the claims of fraud and negligence. Following further testimony from a SoPac officer, SoPac and Jason moved for, and were granted, nonsuit on the foreclosure-based causes of action.

In October, SoPac and Keller filed motions for sanctions, requesting costs and attorney fees pursuant to Code of Civil Procedure section 128.5. Although noting it found the Llamases' action "frivolous and totally without merit," the court stated "the motions must regrettably be denied." SoPac and Keller appeal.

II–VIII*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## IX

### APPEAL OF POST-TRIAL SANCTIONS

■  SoPac and Keller moved for sanctions, including costs and attorney fees, pursuant to Code of Civil Procedure section 128.5,[7] contending the entire action was frivolous and totally without merit. After a hearing, the court denied the motion. It agreed section 128.5 could be applied to an entire action (*Lesser* v. *Huntington Harbor Corp.* (1985) 173 Cal.App.3d 922, 930 [219 Cal.Rptr. 562]), but stated "[t]he dilemma which confronted the court is whether the bad faith required before sanctions may be imposed is to be decided by an objective or a subjective standard."

The court then concluded "plaintiffs' action was frivolous and in bad faith as defined by an objective standard. However, after observing plaintiffs' counsel during many days of trial and hearing, the court is in doubt that Ms. Jaffer pursued the action in subjective bad faith—for a wrongful and dishonest purpose. Although the court and plaintiffs' counsel could not have had more divergent opinions about the quality of plaintiffs' evidence, it did appear that plaintiffs' counsel sincerely believed that there was a basis for recovery."

We understand the court's concern. Our review of the record indicates Ms. Jaffer's presentation below was exasperating in the extreme. She was ill-prepared and consistently failed, despite assistance by the court, to present legally acceptable evidence to support her clients' claims. This resulted in a case that, *as presented,* was utterly meritless. The court noted in its order of dismissal, it had discounted the building code violations issue due to the passage of time and "the confused evidence submitted by plaintiffs [which] resulted in testimony with no probative value." Concerning the negligence count against Jason, the court noted there might possibly have been some negligence on her part for "failing to obtain a lower price from Mr. Keller, but there was *no testimony as to any standard* within the industry or as to

---

*See footnote 1, *ante,* page 1043.

[7] All statutory references are to the Code of Civil Procedure unless otherwise specified.

whether defendant Jason's conduct was negligent under the circumstances.'' (Italics added.)[8]

SoPac and Keller contend that once the court determines an action is frivolous and totally without merit on an objective basis, no consideration of subjective motive or purpose is necessary. Section 128.5 provides a trial court may, in its discretion, "order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay," (§ 128.5, subd. (a).) Subdivision (b)(2) of the section states: " 'Frivolous' means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party."

Here, the court found the action was frivolous in the sense of being totally and completely without merit. But the statute has the additional requirement the frivolous action be a *"bad-faith* action[ ] or tactic[ ] . . . ." (Italics added.) And the court specifically found plaintiffs' counsel "sincerely believed there was a basis for recovery," negating any subjective bad faith.

Appellate courts which have addressed the requirements of the statute are not in harmony. Some are content with the imposition of sanctions where an "action was prosecuted for an improper motive *or* the action undisputedly has no merit." (*Winick Corp.* v. *County Sanitation Dist. No. 2* [(1986)] 185 Cal.App.3d 1170, 1180 [230 Cal.Rptr. 289], italics added.) Others recognize the need to identify both a frivolous action and its institution or continuation in bad faith. (See *Abbett Electric Corp.* v. *Sullwold* (1987) 193 Cal.App.3d 708, 712 [238 Cal.Rptr. 496], and cases cited therein.)

Our study of the legislative history of section 128.5, from its inception in 1981, through two amendments, in 1984 and 1985, convinces us there must be an assessment of *subjective* bad faith in addition to finding a particular action or tactic was frivolous.[9] As originally proposed, Senate Bill No. 947,

---

[8] So, too, with the issues relating to the foreclosure: the most significant problem was "the confused, incoherent state of the evidence . . . such that only expert testimony could have possibly presented the issues in a manner suitable for a jury to decide." Consequently, we are presented with an action that *might* have had merit had it been presented properly.

[9] This is not to say, however, that a finding of frivolousness may not *equate* with a finding of subjective bad faith. If an action is frivolous because instituted "for the purpose of harassing an opposing party," the improper motives of the filing party are obvious.

1981-1982 Regular Session, authorized sanctions for a frivolous motion or tactics causing unnecessary delay. Review by the Senate Committee on the Judiciary noted the lack of an exception for an attorney acting in good faith. When enacted, as approved by the Governor, September 24, 1981, the section allowed sanctions for "tactics or actions *not based on good faith* which are frivolous or cause unnecessary delay." (Italics added.)[10]

The 1984 amendment to section 128.5 (Assem. Bill No. 2752 (1983-1984 Reg. Sess.)) merely made its provisions applicable to judicial arbitration proceedings; there were no changes in the portion relating to the dual requirements the action be "not based on good faith" and "frivolous."

The section was again amended in 1984 to include the safeguard of requiring the punished action be not only in bad faith *causing* unnecessary delay but also *intended* to cause unnecessary delay. Thus, the intent, or subjective factor, is emphasized: "bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." As noted by the Assembly Committee on Judiciary in its analysis of Senate Bill No. 379, as amended April 10, 1985 (1985-1986 Reg. Sess.), "[T]his bill requires that such tactics or actions must be found to be *done in bad faith* prior to the imposition of sanctions. Such amendment would likely reduce the chilling effect on parties who wish to exercise appropriate litigation rights."

Consequently, if a court finds a party's action was "solely intended to cause unnecessary delay," "for the sole purpose of harassing an opposing party," or "totally and completely without merit," sanctions may be imposed if there is the additional determination, where necessary, that it was a "*bad-faith* action[ ] or tactic[ ] . . . ." (§ 128.5, italics added.) In the first two instances, the bad faith finding may well follow from the original finding. In the latter, it may not. That is our situation. The trial court found the Llamases' action "totally and completely without merit," but *not* instituted in bad faith. It therefore declined to impose sanctions.

Because the trial court was present throughout the trial and was fully cognizant of the parties' positions and credibility, we defer to its decision. ██ Moreover, "the trial court must abuse the broad discretion accorded it

---

[10] We note the Enrolled Bill Report to the Governor (by his legal affairs commission), dated September 23, 1981, which recommended he sign the bill, states, "[T]he bill contains the procedural safeguards of prior notice and hearing, and requires a finding that the particular action was not based on good faith *and* was frivolous—this is a high standard to meet."

by the Legislature to justify our interference with a sanction award." (*Luke* v. *Baldwin-United Corp.* (1985) 167 Cal.App.3d 664, 668 [213 Cal.Rptr. 654].) We find no abuse of that discretion.

The court's order denying sanctions to Sopac and Keller is affirmed. Respondents to receive costs on appeal.

Scoville, P. J., and Wallin, J., concurred.

A petition for a rehearing was denied April 9, 1990.