[No. G007477. Fourth Dist., Div. Three. Nov. 9, 1990.]

MONEX INTERNATIONAL, LTD., Plaintiff and Appellant, v. CHARLENE PEINADO et al., Defendants and Appellants.

COUNSEL

Farella, Braun & Martel, Neil A. Goteiner and Charles H. Numbers for Plaintiff and Appellant.

Morgan, Wenzel & McNicholas and David T. McCann for Defendants and Appellants.

## OPINION

**SONENSHINE, Acting P. J.**—The trial court awarded sanctions for a frivolous summary judgment motion against Charlene Peinado and her attorneys. They appeal, contending the motion was not frivolous and, in any event, they had no opportunity to be heard on the issue. By cross-appeal, Monex International, Ltd., claims the court abused its discretion in failing to award all of its costs incurred in responding to the summary judgment below. In addition, Monex requests sanctions on appeal.

I

Monex sells precious metals, a field Braxx Investments Group, Inc., entered in 1983. At that same time, Monex learned its customers were being solicited by Braxx representatives. In November 1983, Monex filed suit against Braxx, Rita Tanner, Tim Zezula, Charles McLaughlin and Peinado for, inter alia, misappropriation of trade secrets. An injunction issued that month, forbidding the defendants' use of any Monex customer information.

In 1988, Peinado filed a motion for summary judgment, requesting she be dismissed from the action as she was not a director of Braxx, had no involvement in its operations, and had no knowledge of the misappropriation. Monex opposed the motion and sought sanctions. In reply, defense counsel insisted the motion had been "diligently researched and prepared . . . in good faith." The court posted its tentative decision to deny the motion and award sanctions. After a hearing, the court affirmed its tentative ruling and awarded sanctions of $2,500: "By way of summary, the evidence was overwhelmingly against granting summary judgment. I noted at the hearing that there was a compelling case for granting summary judgment *against* defendant on certain issues, specifically that defendant Peinado was a director of Braxx and that she participated in the alleged conspiracy to misappropriate Monex customer information. Much of this evidence strongly supporting plaintiff's claims against Defendant Peinado was available to her and her attorneys since this case commenced with a November 1983 preliminary injunction against Defendant Peinado and her codefendants. This evidence included Braxx corporate documents [*sic*] signed by Defendant Peinado (and prepared by her attorney husband),[1] as well as

---

[1] This document, entitled "Agreement to Form and Operate Corporation for Purchase and Sale of Stock" (Agreement) and dated June 9, 1983, was prepared by Robert Peinado, Peinado's husband, who was the Braxx attorney at the time.

It was signed by Tanner, Zezula, McLaughlin and Peinado. The document states the latter four "have formed [Braxx]" and are designated its board of directors. Tanner, Zezula, and McLaughlin were appointed officers and "Peinado shall be hired as a consultant to the corporation and receive a like salary" as the other three.

sworn testimony of a former Braxx manager that Defendant Peinado was aware of misappropriated information. Defendant Peinado and her counsel acted frivolously and in bad faith by asserting in their motion that it was undisputed that Defendant Peinado was not a director of Braxx and that she had no knowledge of Braxx's use of the misappropriated Monex customer information."

## II

Code of Civil Procedure section 128.5[2] grants a trial court discretion to impose sanctions on a party and/or that party's counsel for bad faith actions that are frivolous or brought merely for delay. Appellants contend they were "completely deprived of an opportunity to be heard on the imposition of sanctions." As is typical of their assertions, this one is unsupported by the record.

Appellants rely on *Lesser v. Huntington Harbor Corp.* (1985) 173 Cal.App.3d 922 [219 Cal.Rptr. 562] and *Annex British Cars, Inc. v. Parker-Rhodes* (1988) 198 Cal.App.3d 788 [244 Cal.Rptr. 48], both of which recognize a deprivation of due process where there is no opportunity to respond. However, in each case, the party sanctioned was given *no* opportunity to be heard. In *Lesser*, the court would only entertain argument as to the amount of the sanction award; in *Annex*, the court declined to hear any argument on sanctions. This situation is decidedly different.

The opposition to the motion for summary judgment explicitly requested sanctions. Additionally, defense counsel was told orally and by letter of the demand; the written response merely expresses "outrage" at the request and insists the motion is meritorious and should be granted.

At the hearing, Peinado's counsel was aware at the outset of an adverse tentative ruling *and* the court's reason for imposing sanctions. The court stated to counsel *before* his argument: "Everything I've seen here indicates that there are—although I rarely do it, although I have the discretionary

---

[2](a) "Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay . . . .

"(b) For purposes of this section:

"(1) 'Actions or tactics' include . . . the making or opposing of motions . . . .

"(2) 'Frivolous' means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party.

"(c) Expenses pursuant to this section shall not be imposed except on notice contained in a party's moving or responding papers; or the court's own motion, after notice and opportunity to be heard. An order imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying the order . . . ." (Code Civ. Proc., § 128.5.)

power to do it—are grounds here to grant summary judgment . . . *in favor of the responding party rather than the moving party.* It's just overwhelmingly clear that Miss Peinado was both a director and a co-conspirator." (Italics added.)

There were two attorneys present on behalf of Peinado and *both* argued at length in opposition to the court's statement. And rather than "cutting off" their argument, the court insisted each be allowed to finish his dissertation.[3]

In response to the first Peinado attorney, Monex argued the sanctions issue, citing the myriad reasons for the request—the promise to lodge Mr. Robert Peinado's deposition testimony (which authenticated the Braxx Agreement); Peinado's signature on the Agreement, indicating she is a director; the declarations upon which Peinado relies were taken of the other three directors, *all of whom* refused to answer questions at the depositions noticed by Monex, claiming the protection of the Fifth Amendment; and the repeated attempts by Monex to convince Peinado's attorneys to dismiss the summary judgment motion based on a litany of facts.

Peinado's attorneys were allowed to respond (for several pages of transcript), again insisting it was "undisputed" that Peinado was never *involved* with Braxx in any capacity other than as a mere shareholder and *ending* their opposition to Monex's statements as follows: "I think summary judgment is appropriate in favor of Charlene Peinado." After a brief response by counsel for Monex, Peinado's counsel was told, "You may close, Sir." He did so. We find ample opportunity to be heard and advantage taken of that opportunity.[4]

### III

■   We are well aware of the dichotomy inherent in the power to award sanctions. A court must balance the necessity of penalizing frivolous conduct against the danger of chilling the diligent pursuit of lawsuits by an attorney for his or her client. (*Luke* v. *Baldwin-United Corp.* (1985) 167 Cal.App.3d 664, 668 [213 Cal.Rptr. 654].) Nonetheless, where a trial court concludes a party's motion has been brought in bad faith and is frivolous,

---

[3] "[By Monex]: Your honor, may I be heard?
"[By the Court]: When he's [Peinado attorney] through." Counsel then continued.

[4] The citation from the hearing, upon which Peinado relies, is taken from the last page of a 21-page hearing transcript. It occurred after the hearing had come to an end, and after Peinado's attorney was given his opportunity to "close" and did so. The court was orally explaining its ruling and when Peinado's attorney sought to interrupt, merely reminded him: "Don't interrupt, Sir, I'm ruling." Clearly, this was in order and the attorney was not. Typically, Peinado makes no mention of the remaining 20 pages of argument.

and sufficient evidence supports that conclusion, the imposition of sanctions will be upheld on appeal.

█ Appellants contend the court abused its discretion because of Peinado's "complete lack of involvement in the operations of Braxx, including her lack of knowledge of the alleged use of a purportedly misappropriated customer list." They assert it was difficult to address this issue because the court "failed to recite in detail the facts upon which it based its conclusion." Not so. The court presented an *extremely detailed* 23-page written explanation of its decision. This ridiculous contention deserves no further comment.

They next claim the "only" evidence, presented to counteract Peinado's insistence she was never a director of Braxx, was the Agreement, which they claim was not properly authenticated. However, as noted by the court, "Defendant Peinado's husband, Robert Peinado, Braxx's attorney, authenticated the Director Agreement in his deposition taken in a preceding case . . . . Defendant's attorneys did not challenge either this authentication or the truth of the contents of the Director Agreement. Rather, they asserted, without any evidence, that the Director Agreement did not go into effect." In light of the lack of cooperation of the Braxx principals, it is disingenuous in the extreme to suggest *Monex* "failed to produce any competent evidence establishing that Peinado was in fact elected to the Board."[5]

Further evidence, in addition to the Agreement listing her as a director, of Peinado's involvement with the affairs of Braxx was: She owned 24 percent of the Braxx stock and contributed 50 percent of the funds for its incorporation; was a cosignator on the Braxx bank accounts, signed checks on the corporation's behalf (only officers have this authority) and had control over the customer deposits; had an office in corporate headquarters; and distributed Braxx business cards with her name indicating she was a "financial consultant."

The court also noted the incompetent evidence which Peinado *did* offer— some of the declarations and deposition testimony were from a prior action where Monex was not even a party. *And* those same witnesses, as observed earlier, have taken Fifth Amendment protection, or defaulted, in this action. As to Peinado's knowledge of the misappropriated customer list, the declaration of John Babcock, which was one of the bases for the November

---

[5] The officers of Braxx were the ones with superior knowledge on this issue, yet *all* were uncooperative. Tanner, Zezula, and McLaughlin asserted Fifth Amendment privileges when questioned.

1983 injunction against Peinado and her fellow directors, is informative. Formerly a Monex account representative, Babcock admitted his involvement in the scheme to use original customer lists he obtained from another former Monex employee. He had discussions with the individuals involved in forming Braxx and, in particular, in May 1983 "attended a meeting at a local restaurant to explore the possibility of [his] participation. Present at this meeting were Rita Tanner, Charlene Peinado, Tim Zezula and Charles McLaughlin, all of whom eventually became principals in Braxx." During the meeting, he "revealed to the group that [he] had possession of a Monex customer list, and offered to make it available for the purpose of soliciting business for Braxx. [He] was subsequently hired as Sales Manager for Braxx."

In short, Peinado's assertions, through her counsel, to the court as to "undisputed" facts were "untrue and frivolous." The evidence presented by Monex overwhelmingly established "triable issues of fact as to each of the issues which [it] contends are in dispute." "Moreover," said the court, "prior to hearing of the motion, Monex's counsel repeatedly cited defendant's counsel to this overwhelming evidence and gave Peinado's counsel several opportunities to withdraw this frivolous motion." ■ ■ ■ ■ This did not occur, despite the instances of perjury by Peinado which were pointed out to her counsel, who was warned sanctions would be sought if the motion was not withdrawn.[6]

■ Given these facts, the many chances given to Peinado to withdraw, and defense counsel's "cavalier attitude toward Monex expending substantial legal fees to oppose this motion," the court sanctioned Peinado and her counsel $2,500, "which represents reasonable attorneys' fees incurred by plaintiff in opposing this motion." The award was well grounded and we find no abuse of the broad discretion allotted to the trial court. (*Bach* v. *McNelis* (1989) 207 Cal.App.3d 852, 878 [255 Cal.Rptr. 232].)[7]

---

[6] At oral argument, defense counsel clutched wildly at our recent decision in *Llamas* v. *Diaz* (1990) 218 Cal.App.3d 1043 [267 Cal.Rptr. 427], in which we held that merely because an action is without merit may, in some circumstances, *not* mean it is a bad faith action. In *Llamas*, the trial court was faced with "a case that, *as presented*, was utterly meritless." (*Id.* at p. 1046.) Nonetheless, "the court specifically found plaintiffs' counsel 'sincerely believed there was a basis for recovery,' negating any subjective bad faith." (*Id.* at p. 1047.) Ineptitude is not synonymous with bad faith. "This is not to say, however, that a finding of frivolousness may not *equate* with a finding of subjective bad faith." (*Id.* at p. 1047, fn. 9.) That is our situation. The sanctioned attorneys, experienced and well-known in the profession, were warned again and again of their baseless stand. The pleadings presented to the court were contradicted by their own documents. The court specifically decried the cavalier attitude adopted by all defense counsel. There could be no reason for pursuing the matter other than to delay or harass.

[7] Appellants blithely state Peinado was dismissed with prejudice after this motion was heard, which they claim buttresses their contention the summary judgment motion was well-

## IV

■ The trial court awarded $2,500, rather than the $8,250 requested by Monex, as sanctions for the frivolous summary judgment motion. In its cross-appeal, Monex contends the court abused its discretion in awarding this amount because "Monex had no choice but to marshal its best effort in opposing the motion"; there were three lawyers working on the motion, requiring numerous affidavits, declarations and exhibits; and it was necessary for one attorney to fly from San Francisco. This is all no doubt true.

However, the court has wide discretion in this matter. (*Bach* v. *McNelis, supra,* 207 Cal.App.3d 852, 878.) "[T]he court is an 'expert' on the subject of attorneys fees . . . [and] the trial judge is the one who makes the award based upon proceedings before him and from facts which are extant in the court files." (*Dwyer* v. *Crocker National Bank* (1987) 194 Cal.App.3d 1418, 1438 [240 Cal.Rptr. 297].) We find no manifest abuse of discretion which would allow us to interfere with that award.

## V

■ Monex requests sanctions on appeal. We find them eminently justified. Nothing has been presented to this court that was not soundly discredited in the court below. Additionally, Peinado and her counsel did not even see fit to respond to the request for sanctions. There is no reply brief and no response to the cross-appeal.

Appellants proceeded below with a totally frivolous motion *after* being informed several times of the risks attendant with its continuance. They have compounded that affront with an equally frivolous appeal, requiring Monex to again expend time and energy defending a meritless action. We do not doubt that "any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) As was the court in *Dwyer* v. *Crocker Bank, supra,* 194 Cal.App.3d 1418, 1439, we are "hard-pressed to find that the appeal in this instance was anything but a calculated effort to 'harass the respondent . . . .'"

---

founded. According to the respondent, the reason she was dismissed was because it was a requirement of an ongoing settlement with Braxx's insurance company, certainly *not* because she was not liable. Again, we are offered a not-too-thinly-veiled attempt to prejudice this court, a tactic all too prevalent below and on appeal.

Judgment affirmed. Respondent to receive costs on appeal and Charlene Peinado and her counsel are directed to pay Monex an additional $3,750 for the frivolous appeal.

Crosby, J., and Moore, J., concurred.