[No. A042970. First Dist., Div. Two. Apr. 5, 1990.]

EDWARD P. LIND, an Incompetent Person, etc., Plaintiff and Respondent, v.
MEDEVAC, INC., et al., Defendants;
B. MARK FONG., Jr., et al., Appellants.

COUNSEL

Bryce C. Anderson for Appellants.

Marc C. Barulich for Plaintiff and Respondent.

OPINION

**PETERSON, J.**—Appellants in this action are an attorney and the law firm for which he works. They appeal from an order of the San Mateo Superior Court imposing sanctions against them as a result of the attorney's conduct in contacting the members of a jury after the trial of a personal injury action. Appellants claim the trial court lacked the authority to impose sanctions in the manner in which it did. We agree and reverse the trial court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In July 1984, Edward P. Lind, by and through his conservator Wendell J. Lind (plaintiff), filed a complaint for personal injuries. Named as defendants were Medevac, Inc.; its employees, Dana Young and Carol Ferguson; and others. Plaintiff was represented by attorney Marc C. Barulich of the firm of

Barulich & Barulich. Defendants were represented by appellants B. Mark Fong, Jr., and his law firm, Robert A. Harlem, Inc. & Associates.

In January 1988, the matter was tried before a jury which rendered a judgment in favor of defendants. Plaintiff then moved for a new trial or in the alternative for judgment notwithstanding the verdict (JNOV). The motions were based, inter alia, upon allegations of jury misconduct. Defendants opposed the motion, noting that plaintiff had not submitted juror affidavits in support of the motion for new trial as required by Code of Civil Procedure section 658.[1] In reply, plaintiff claimed that he had been prevented from obtaining juror affidavits by a letter defense counsel had sent to the jurors. The text of that letter is as follows: "Dear [Juror]: [¶] This is to thank you again for your service as a juror. I know that my clients, Carol Ferguson and Dana Young[,] are glad at last to put the events of four years ago behind them. [¶] On occasion, following a jury trial, the losing side will hire an investigator to contact the trial jurors. The purpose of these investigators is to impeach the jury's verdict. The [investigator] will ask you about your deliberations in the jury room and will prepare a statement for your signature. This statement will then be presented to the judge to convince him to set aside the jury's verdict as improper. [¶] You are under no obligation to speak with these investigators and need not sign anything. You worked with your fellow jurors to reach a fair result. I would not want to see that result set aside because of sharp investigative tactics. [¶] Please contact me should anyone attempt to speak with you about your jury service. I would like to be present should you choose to speak with an investigator. [¶] Should you have any questions or wish to discuss the case, please do not hesitate to contact me. Again, thank you for your time and service. [¶] Very truly yours, [/S/] B. Mark Fong"

The court denied the motion for JNOV concluding the verdict was supported by substantial evidence. The motion for new trial was denied because it was not supported by any juror affidavits. However, the trial judge expressed disapproval of the letter appellants had sent to the jurors, and set a hearing for Fong and his law firm to show cause why they should not be sanctioned for "deliberately interfering" with plaintiff's right to obtain juror affidavits to support a motion for new trial.

The order to show cause was heard on April 22, 1988. After hearing the arguments of counsel, the court imposed sanctions of $20,000 against appellants, holding the letter they sent violated the rules of professional conduct

---

[1] Unless otherwise indicated, all subsequent statutory references are to the Code of Civil Procedure.

in that it was likely to adversely influence the jurors in their present and future jury service. This timely appeal followed.

## II. DISCUSSION

Appellants challenge the court's imposition of sanctions on both substantive and procedural grounds. Substantively, they argue that the letter they sent was proper and did not violate the rules of professional conduct. Procedurally, appellants claim that the trial court lacked the authority to impose sanctions in the manner in which it did.

### A. *The Letter*

At the time these proceedings were held, former rule 7-106 of the Rules of Professional Conduct (now rule 5-320) provided in part, "(D) After discharge of the jury from further consideration of a case with which the member of the State Bar was connected, the member of the State Bar shall not ask questions of or make comments to a member of that jury that are intended to harass or embarrass the juror or to influence the juror's actions in future jury service. [¶] (E) A member of the State Bar shall not conduct directly or indirectly an out of court investigation of either a venireman or a juror of a type likely to influence the state of mind of such venireman or juror in present or future jury service." (Deering's Cal. Codes Ann. Rules (State Bar) (1988 ed.) pp. 43-44.)

Section 657, subdivision 2 allows the granting of a new trial for "[m]isconduct of the jury." Section 658 requires application for new trial on the ground of jury misconduct to be made upon affidavits.

■ As applicable to Rules of Professional Conduct, former rule 7-106, sections 657, subdivision 2, and 658 necessarily contemplate either the limited extension of a jury's "present" service or limited "future . . . service," between the date of its discharge and the expiration of time to move for new trial in the case. During that period, such jurors may perform this "service" by furnishing affidavits concerning jury misconduct of themselves or other jurors. They are the obvious, and usually the only, source of available sworn testimony by affidavit, which the law requires as a basis for new trial on the ground of juror misconduct. Their affidavits may be vital to a fair disposition by the trial court of the case, to whose result they contributed. The trial court properly rejected the argument that a juror's "present" jury service could not be affected *solely* because counsel's contact with the juror came after the jury was discharged. We affirm the trial court's implicit finding that the Rules of Professional Conduct concerning counsel's contact

with jurors remain fully applicable in the period from jury discharge to expiration of the time for filing new trial motions in the case in which those jurors served.

The trial court did not commit error in finding the letter which appellants sent to the jurors in the present case violated former rule 7-106. That finding was supported by substantial evidence. The letter asserts that a fellow member of the bar might employ "sharp investigative tactics" to "impeach" the jury's verdict and have it set aside as "improper." The lower court found this letter could easily adversely influence a juror in his "present" or "future" jury service. Taken as a whole, the letter advising a juror, inter alia, that the verdict of his jury could be "impeach[ed]" and set aside as "improper" certainly implies such juror may be falsely importuned to say or do something which might lead to that result, i.e., to the false conclusion the jury or some of its members undertook some wrongful or unlawful act in arriving at a verdict. This implication is clearly brought into focus by the letter's assertion that "sharp investigative tactics" may be used to accomplish this objective, thereby suggesting a subversive and false result is likely to be sought by losing counsel through his own actions or those of his posttrial investigator. It is common knowledge that it is increasingly difficult to obtain willing citizens to serve as members of a jury. Letters such as the one sent by appellants in the present case unprofessionally denigrate anticipated and unproven conduct of opponents, and will only exacerbate the reluctance of some persons to undertake jury service for fear their decisions will be falsely attacked and overturned by reason of unprofessional and improper conduct of counsel designed to achieve that result. They are likely, incidentally, to be perceived by jurors as converting the performance of their civic responsibility to serve as jurors into the center of a distasteful and acrimonious posttrial dispute between lawyers whose motives, they are told, are suspect and misleading.

The trial judge was justified in determining that the true purpose of the letter was to achieve the chilling result of preventing attempts by the losing side to communicate with jurors after their discharge, in a legitimate effort to determine if juror misconduct existed as grounds for a new trial, and to obtain permitted affidavits concerning any such misconduct.

Appellants urge it has been a "common experience" among trial lawyers that, after a trial has been completed, investigators acting on behalf of the losing party will privately approach jurors and use various plausible stories in order to "trick[]" the jurors into making statements which do not fairly reflect the nature of the jurors' deliberations. Thus, they claim they should not be sanctioned for warning jurors about potential abuses by investiga-

tors. We find this argument unpersuasive. Were we to adopt this rationale, we would do little more than approve unprofessional conduct of counsel on the ground like conduct of the other side was anticipated. We decline to sanction preemptive strikes of this nature. Attorneys who individually or through investigators employ such tactics may well be subject to discipline by the court, as well as appropriate authorities of the State Bar.

■ An attorney wishing to protect a verdict against such tactics can do so within the ethical mandates of the rules of professional conduct. For example, an attorney who wins a trial by jury should not be barred from writing jurors post verdict, thereby requesting that he be notified of any posttrial contact with the jurors by the adverse side; and requesting that he be further allowed either to be present for any interviews granted the adverse side, or to discuss with the juror any telephonic or written communications received from the adverse side.[2]

## B. *Sanctions*

■ The court rested its imposition of sanctions upon its inherent power to control proceedings before it pursuant to former section 128.[3] However, it is clear that sanctions cannot be based on this ground. In *Bauguess v. Paine* (1978) 22 Cal.3d 626, 635-639 [150 Cal.Rptr. 461, 586 P.2d 942], our Supreme Court held that attorney fees could not be awarded as sanctions under section 128. The *Bauguess* court reasoned that attorney fees could only be awarded pursuant to express statutory authority. (*Ibid.*) The court in *Yarnell & Associates* v. *Superior Court* (1980) 106 Cal.App.3d 918 [165 Cal.Rptr. 421] extended the *Bauguess* rationale beyond the realm of attorney fees as sanctions, and held that the imposition of any monetary sanction must be based upon express statutory authority. Thus, in *Yarnell,* the court disallowed an award of monetary sanctions imposed under former section 128. (Pp. 921-923.)

In the present case, it is unclear whether the sanctions imposed on appellants were intended to reimburse plaintiff for attorney fees or solely as a

---

[2] The lower court stated that "good sense" and "fairness" dictate "both sides should be afforded the opportunity *to be present at the same time,* " when posttrial interviews of jurors are sought by counsel for one of the parties. (Italics added.) The court further opined generally that no impropriety occurred in defense counsel requesting to be present when, and if, the unsuccessful plaintiff's counsel or his investigator interviewed the subject jurors; or in defense counsel addressing a letter to the jurors making such a request.

[3] Former section 128 provided in part, "(a) Every court shall have the power to do all of the following: [¶] . . . [¶] (3) To provide for the orderly conduct of proceedings before it, or its officers. [¶] . . . [¶] (5) To control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." (Stats. 1987, ch. 3, No. 1 West's Cal. Legis. Service, p. 8; No. 1 Deering's Adv. Legis. Service, p. 8.)

monetary penalty. While plaintiff submitted no evidence to the court detailing fees he expended as a result of appellants' conduct, the written order signed by the trial judge noted that the sanctions were to be paid to his attorney. However, whether viewed as reimbursement for attorney fees or as a monetary penalty, the court's award of sanctions under former section 128 cannot stand.

Plaintiff, however, directs our attention to the well-established rule of appellate review which requires us to uphold the trial court's decision if there is any theory of law upon which it can be upheld. (See, e.g., *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

The trial court believed it had power to impose sanctions here under "the general powers of the court under Section 128 . . . ." In so concluding, the trial judge explicitly refrained from utilizing either his contempt powers or those sanction powers he had under section 128.5.[4] He said: "In any event, *I have further power under CCP Section 128.5*, perhaps, to impose sanctions, but I don't really want to make my ruling based on contempt powers or 128.5." He then wrongly opted for former section 128 as a basis for his action.

In *Zak v. State Farm etc. Ins. Co.* (1965) 232 Cal.App.2d 500, 506 [42 Cal.Rptr. 908], the court held that where the trier of fact has *not* considered a theory under which the evidence is conflicting, the reviewing court cannot rely on that theory to sustain the lower court's action. *Zak* is inapposite here, however, because the lower court *did* consider the imposition of sanctions under section 128.5, believing he had power to utilize that section but opting instead to utilize former section 128 under which sanctions in this case are proscribed.

Accordingly, we reverse the award of sanctions under the authority of former section 128; and we remand this action with instructions to the trial court to reconsider this case to determine whether appellants' conduct constituted bad faith actions or tactics which were frivolous, so as to justify imposition of sanctions under section 128.5. We also leave to the sound discretion of the trial court whether appellants' conduct was sufficiently serious to warrant review by the disciplinary authorities of the California State Bar.

---

[4] "Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. . . ." (§ 128.5, subd. (a).)

## III. DISPOSITION

The order imposing sanctions is reversed. The case is remanded for further proceedings consistent with the views expressed herein.

Smith, Acting P. J., and Benson, J., concurred.