[No. D013816. Fourth Dist., Div. One. Jan. 10, 1992.]

WEST COAST DEVELOPMENT, Plaintiff and Appellant, v.
RONALD CHARLES REED, Defendant and Respondent.

**COUNSEL**

Robert T. Pasulka for Plaintiff and Appellant.

Perez & McNabb and Donna M. Peizer for Defendant and Respondent.

**OPINION**

**FROEHLICH, J.**—We deliberate here on the subject of sanctions for frivolous actions. The trial court, after the case had been voluntarily dismissed by plaintiff West Coast Development, awarded sanctions against plaintiff (but not plaintiff's attorney) under Code of Civil Procedure[1] section 128.5 in the sum of $5,000. Plaintiff appeals, seeking a reversal of the award of sanctions.[2] We agree with the trial court that sanctions were appropriate, but reverse and remand because of procedural error.

### TRIAL COURT RULING AND SCOPE OF REVIEW

The written order granting sanctions contains no findings or specification of the grounds for sanctions. The oral statement granting defendant's motion was as follows:

"I am going to grant the motion to enter judgment for costs in favor of the defendant in the amount of $122. In addition, under section 128.5, the Court finds that the lawsuit initially filed by the plaintiffs was filed without merit; that it was pursued without merit; that settlement offer made by the plaintiff, accepted by the defendants and then refused by the plaintiff in the dismissal without prejudice on the eve of trial was done in bad faith and sanctions are awarded against the plaintiff and in favor of the defendant in the amount of $5,000."

Plaintiff attacks this judgment on a number of grounds. The principal contention, however, appears to be that the facts surrounding the litigation and plaintiff's tactics related thereto do not constitute the bad faith tactics calculated to harass an opposing party which are required, under section 128.5, in order to assess sanctions. ■ This is, then, principally a review

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2]Appellant also contends the trial court erred in failing to grant sanctions in favor of plaintiff-appellant and against the defendant and his counsel. We take the liberty of declining to treat this contention seriously. It is difficult to comprehend how one might be entitled to sanctions for procedural problems encountered in the preparation of his case for trial (as was the contention here) when the case is so flimsy that it is dismissed voluntarily on the eve of trial.

of the evidence supporting the trial judge's determination. Thus, we search for "substantial" evidence in support of the court's implied findings. (*Summers* v. *City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1070-1071, fn. 19 [275 Cal.Rptr. 594].) Assuming some evidence exists in support of the factual findings, the trial court's exercise of discretion will not be disturbed unless it exceeds the bounds of reason. (*Winick Corp.* v. *County Sanitation Dist. No. 2* (1986) 185 Cal.App.3d 1170, 1176 [230 Cal.Rptr. 289].)

In reviewing the facts which led the trial court to impose sanctions, we must accept the version thereof which supports the trial court's determination, and must indulge in the inferences which favor its findings. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193]; *Homestead Supplies, Inc.* v. *Executive Life Ins. Co.* (1978) 81 Cal.App.3d 978, 984 [147 Cal.Rptr. 22].) Certain background facts are disputed by the parties, and the ultimate inferences to be made therefrom are very much in dispute. Our statement of the factual background of the case, therefore, reflects the interpretation of the evidence most favorable to the defendant.

### Factual Background

Plaintiff partnership is the owner of residential rental real estate. The partnership was represented in all aspects of this case by its agent, Joseph Segal (Segal). Defendant Ronald Charles Reed (Reed) is a small businessman engaged in the sale and installation of aluminum shingle roofs. Reed is a sole proprietor and the successor in interest to his father, Charles Reed, who was in the same business before defendant. The lawsuit giving rise to the judgment for sanctions was filed by plaintiff in October 1989, and involved claims against Reed for work done (or not done) on two parcels of plaintiff's realty: the Fern Glen property and the Ingraham property.

Reed, after having been served with the complaint, had some difficulty in responding, but he finally filed a form of general denial in propria persona in March 1990. Thereafter, Reed retained Attorney Peizer to represent him, and Peizer undertook a course of telephonic and letter negotiation with Attorney Pasulka, counsel for plaintiff. Peizer did not, however, become attorney of record. When negotiations failed to result in settlement of the case, Peizer prepared for trial and traveled to San Diego the day before trial was scheduled. That very same day, after discussing the merits of the case with his client, Pasulka filed a dismissal without prejudice.

Attorney Peizer then entered her formal appearance on behalf of Reed by filing contemporaneously a memorandum of costs and a motion for sanctions under section 128.5. Peizer sought a total of $7,860.11, based upon fees she

had charged Reed and costs incurred in preparing for trial. ▬ ▬
Nothing in the record indicates the court's basis for imposing sanctions of
only $5,000, rather than the higher amount established by Peizer's affidavit.[3]

The trial court's oral statement of reasons for imposing sanctions covers
essentially the entire course of plaintiff's litigation. The court found that the
case was without merit when filed, that it was maintained without merit, and
that plaintiff's settlement negotiations and ultimate dismissal without preju-
dice evidenced bad faith. In order to assess the evidentiary support for these
conclusions, it is necessary that we review in some detail the transactions
leading to the litigation and the course of the litigation itself. We proceed to
do that.

The first work on property being managed by Segal occurred in 1983
when Charles Reed (Reed's father) installed a new roof on the Ingraham
property for a contract price of $7,097. The job was done in accordance with
a written contract. The contract provided for a 40-year guarantee from Alcoa,
the manufacturer of the roofing shingles. However, Segal testified that
Charles Reed agreed to warrant the roof "for life," and to do any necessary
repair or replacement without further charge. The work under this contract
was completed and Charles Reed was paid in full.

In 1989, when discussing roof work on the Fern Glen property with Reed,
Segal was informed that Charles Reed had died and Reed had taken over his
business. At some point following the eruption of the dispute concerning the
Fern Glen property, Segal learned that Reed would not stand behind the
"lifetime" guarantee of his father as to the Ingraham property. Notwithstand-
ing that no defects had yet been noticed in the roof of the Ingraham property,
Segal regarded this as something of an anticipatory breach of contract, and
included a claim based on same in his complaint (which otherwise related
only to the Fern Glen job).

Turning to the Fern Glen contract: This was a written contract to install an
aluminum shingle roof for a fee of $8,100. At some point in negotiations

---

[3]During oral argument of the motion for sanctions Attorney Pasulka represented that he had
been paid "at least $5,000" by his client for legal services involved in the case. This
admission of charging $5,000 for fees in a case in which the realistic amount in controversy
was less than $1,000 may have motivated the judge to award that amount in fees to the
adversary. This is speculation on our part, however, because the record is simply silent as to
whether the judge determined that the services performed by Peizer did not warrant a fee of
$7,860, or perhaps concluded the culpability of the plaintiff did not warrant a penalty of more
than $5,000, or based the award on some other reason. The determination of the amount of the
sanction is a matter for the court's discretion, and the court is not bound by calculations of
hours and fee rates. (See *Dwyer* v. *Crocker National Bank* (1987) 194 Cal.App.3d 1418, 1438
[240 Cal.Rptr. 297].)

(whether before or after execution of the written contract is disputed) Reed orally agreed to install some Styrofoam pads under a portion of the roof to provide additional support. Reed's evidence as to the value of these pads is that they would have cost $32 and would have required not more than an hour of labor to install.

Reed forgot to install the Styrofoam pads. Segal therefore paid Reed for the job except for a withholding of $924, which he agreed to pay Reed when the pads had been installed. Reed's first attempt to install the pads failed because his worker did not show up on schedule. This resulted in disputes and/or misunderstandings between Reed and Segal, and Segal imposed additional conditions on the payment of the $924 which Reed was unwilling to accept. Reed's second attempt to install the pads was then blocked by Segal. This led to the filing of a mechanic's lien by Reed, followed by the filing of the instant lawsuit by Segal (the named plaintiff was the partnership owner of the property; no one verified the complaint; the moving force on behalf of plaintiff, however, was Segal).

A review of the form of the lawsuit filed by Segal gives flavor to the excess of zeal imparted to this case by Segal and his lawyer, Pasulka. The mechanic's lien had been filed in June 1989. Since no action to foreclose it had been commenced within 90 days, the lien expired in September in accordance with Civil Code section 3144. At the time of filing of the lawsuit in October 1989, the recorded lien was therefore legally a nullity. *However,* we will assume that some "reasonable attorney" (to use the language of *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179]) might consider it necessary or appropriate to take action in superior court to establish of record the nullity of the paper lien. That claim, however, was contained in the fifth and sixth causes of action of the complaint.

The other causes of action were: One: intentional misrepresentation (fraud) on the theory that when Reed promised to install the $32 pads he secretly intended not to do so; Two: negligence, in the sense that if the misrepresentation was not intentional it was at least negligent; Three: breach of contract for failing to install the pads; Four: slander of title for filing a false mechanic's lien; Six: (there were two "Sixth" causes of action) declaratory relief as to whether Segal owed Reed the $924 and a request for a declaration of rights that such amount was not owed because the Styrofoam pads were omitted; Seven: an action framed as declaratory relief based upon Reed's repudiation of his father's lifetime guarantee on the Ingraham roof.

Thus we see the majesty by which a $32 small claims (or possibly as much as a $924 small claims) action coupled with the existence of a null

mechanic's lien can give rise to a full-blown action based upon intentional and negligent torts, breach of contract, and miscellaneous rights to declaratory relief. While possibly irrelevant to our review, one cannot help but remark that the legal fees to be charged by Segal's counsel obviously at this point already exceeded the highest amount possibly in controversy.

Following the filing of the complaint Reed and Pasulka engaged in negotiations to settle the lawsuit. While they could not agree on the precise terms of settlement, Reed in December 1989 agreed to, and did, release the mechanic lien. Notwithstanding the extermination of the only reason for the litigation being in superior court, the case lived on. With Pasulka's assistance, Reed managed to file his denial in propria persona in March 1990. Pasulka filed a memorandum that the case was at issue in April, and commenced taking depositions and seeking discovery of documents in July. Pasulka not only took Reed's deposition, but sent notices of depositions and document production requests to at least three other supposed witnesses to the transaction.

Pasulka's attempts at discovery were not entirely successful, giving rise (of course) to motions to compel and for sanctions. At some point Reed retained Attorney Peizer, who although not entering the case of record commenced negotiating with Pasulka. It is undisputed that at various stages in the litigation, both before and after Peizer entered the scene, Reed was willing to finish the roofing job by installing the Styrofoam pads if Segal would pay him the $924. A detailed letter outlining potential terms of settlement was sent from Peizer to Pasulka on August 2, 1990. Pasulka, by letter dated August 13, 1990, rejected settlement, asserting the need to discover potentially existing additional contract documents. The dispute was never resolved, apparently because of increasing demands by Segal as to the performance of oral warranties on the two jobs. Segal ultimately instructed his attorney to attempt rescission of the Fern Glen contract, which would have required a refund of moneys paid and a dismantling of the aluminum roof.

Trial, originally set for July 12, 1990, had been postponed upon the motion of Pasulka until September 18, 1990. Notwithstanding this fast approaching court date, Pasulka vacationed in Canada from September 4 to September 12. He was not in the office, therefore, to receive a demand letter written by Peizer on September 10, 1990, advising that if she had to prepare for trial she would seek sanctions. When Pasulka returned from vacation on September 12 he naturally was busy with other matters, and did not see her demand letter until Saturday, September 15. When he called her office on Monday, the 17th, she had already left (from San Jose) to travel to San Diego.

Pasulka, on Monday, finally got around to discussing the practicalities of the case with Segal. He advised of the expense the trial would require, the fact that success was not assured, and called attention to the fact that perhaps the issue of the roof warranties was not all that important because there was "nothing currently wrong with the roofs." Upon consideration of this advice, Segal authorized, and Pasulka carried out, the filing of a voluntary dismissal. Thus, Peizer was advised there would be no trial on the eve of the date set for trial, after she had prepared for trial and traveled to San Diego to present the defense.

## DISCUSSION

### 1. *The Question of Bad Faith Tactics for Purpose of Harassment, Warranting Sanctions*

Sanctions under section 128.5 are awardable for "bad-faith actions or tactics" that are "frivolous or solely intended to cause unnecessary delay." "Frivolous" is defined in section 128.5, subdivision (b)(2) as either "totally and completely without merit" or "for the sole purpose of harassing an opposing party." ■ While there are some cases suggesting the contrary,[4] the weight of authority presently requires a showing not only of a meritless or frivolous action or tactic, but also of a bad faith taking of the action or tactic. (*Llamas* v. *Diaz* (1990) 218 Cal.App.3d 1043 [267 Cal.Rptr. 427]; *Bruno* v. *Superior Court* (1990) 219 Cal.App.3d 1359 [269 Cal.Rptr. 142]; *Summers* v. *City of Cathedral City, supra,* 225 Cal.App.3d 1047.) Of course the prosecution of a frivolous action may in itself be evidence from which a finding of subjective bad faith may be made. (*Llamas* v. *Diaz, supra,* 218 Cal.App.3d at p. 1047, fn. 9.)

■ A review of precedent indicates that the bad faith requirement of section 128.5 does not impose a determination of evil motive. The concept of "harassment" includes vexatious tactics which, although literally authorized by statute or rule, go beyond that which is by any standard appropriate under the circumstances. We appear to be approaching a consensus on the morality of litigation tactics which requires that counsel, even if on technically correct legal ground, not take action which unreasonably or unnecessarily injures the opposing counsel or party. In *In re Marriage of Gumabao* (1984) 150 Cal.App.3d 572 [198 Cal.Rptr. 90], for instance, an attorney was sanctioned because he failed to call the court and opposing counsel to alert them to his inability to attend a hearing. The court characterized his conduct as "discourteous . . . towards opposing counsel [and] . . . not in good

---

[4]See, e.g., *Winick Corp.* v. *County Sanitation Dist. No. 2, supra,* 185 Cal.App.3d at page 1177; *On* v. *Cow Hollow Properties* (1990) 222 Cal.App.3d 1568, 1575 [272 Cal.Rptr. 535].

faith," and remarked that "[section 128.5] does not require willfulness to be an aspect of the [improper] actions or tactics." (*Id.* at p. 577.)

Similar instruction as to the utility of section 128.5 in remedying the unprofessional conduct of lawsuits is found in *Ellis* v. *Roshei Corp.* (1983) 143 Cal.App.3d 642 [192 Cal.Rptr. 57]. There the cross-complaint was defective because it miscited a code section. The attorney for cross-complainant offered to amend the pleading. Opposing counsel refused the stipulation, however, electing instead to file a formal demurrer. The trial court sustained the demurrer but then granted sanctions, finding that the offending counsel could have achieved every benefit by the stipulation he later obtained through formal processes. In affirming this action, the appellate court stated: "[W]e note that it is not possible for us to set forth with any degree of exactness all possible situations in which sanctions are appropriate under section 128.5." (*Id.* at p. 649.)

Finally, we cite *Mungo* v. *UTA French Airlines* (1985) 166 Cal.App.3d 327 [212 Cal.Rptr. 369]—a case very close in factual context to this one. The appellant in that case had sought a trial continuance, but when it was denied announced that he would be ready for trial on the date set. He knew at that time that opposing counsel would be incurring great expense in bringing witnesses from all around the world for the trial. On the day of trial, appellant's counsel asked for a several-day delay because a key witness from Tahiti could not be reached. When this was denied, he dismissed the case as to the respondents who had brought their witnesses for trial. In affirming sanctions against appellant, the appellate court stated: "Counsel had the responsibility not to lead the court and opposing counsel to believe that there would be a trial on February 22 knowing that the key witness was not even in the country and had not been contacted even up to the hour of the trial. These facts indicate bad faith." (*Id.* at p. 333.)

 Turning now to the facts of our case: We conceive that if the actions of Segal and Pasulka are segmented and viewed sequentially, it would be difficult to say that any one aspect of their prosecution of this litigation warranted sanctions. Certainly a plaintiff is privileged, at any time, to dismiss his lawsuit. Failing to accept a settlement offer, even if such conduct is completely unreasonable, is also no ground for imposition of sanctions. Also, while the trial court found that this action was meritless from its inception, we must acknowledge that the action for removal of the mechanic's lien had at least colorable merit.[5] Additionally, even though section 128.5 sanctions may be triggered by the inclusion of frivolous causes of

---

[5]See Civil Code section 3154, which provides a specific procedure for the cancellation of a mechanic's lien after its effective time period has expired. The practical reasons which may

action with a nonfrivolous claim (*Bach* v. *McNelis* (1989) 207 Cal.App.3d 852 [255 Cal.Rptr. 232]), we would not be disposed to chastise Mr. Pasulka unduly for filing an eight-count complaint when one or two counts would have done just as well. None of us on this appellate panel has taught civil pleading for many years, but from the pleadings we review it appears to be accepted learning to state one's claim in as many alternative legal theories as can be imagined, regardless of the difficulty of fitting the actual facts to all of the counts.

It is when the totality of the exercise is contemplated that one becomes satisfied that Segal and Pasulka abused not only opposing party and counsel but the courts as well. They started out with a very marginal lawsuit. So long as the mechanic's lien continued of record they could claim the necessity of litigation. In midstream, however, the mechanic's lien was released. At that point the only remaining viable claim was one within the jurisdiction of the small claims court. No reasonable attorney, in our view, would press a claim for a "lifetime guarantee" of a roof when the commitment was made orally, and where the contract was otherwise reduced to written form. Moreover, there were no grounds in this case for claims of fraud or misrepresentation. This was a simple contract entered into by a very small businessman who by and large performed his work. After release of the mechanic's lien the substance of the litigation became insubstantial in the extreme.

Segal and Pasulka would not or could not recognize this, however. They continued useless and unproductive "discovery" actions and did not, in our opinion, bargain for disposition of the lawsuit in good faith. We view Pasulka's and Segal's approach to the date of trial as cavalier, in the extreme. While the case may in fact have been inconsequential, its filing and maintenance in the superior court created consequence. The cap to this inadvised series of events, of course, was requiring opposing counsel to prepare for and travel to San Diego for the trial, when Pasulka and Segal either knew or should have known that they would not go to trial.

We therefore find plaintiff and appellant's conduct (attributing to Segal and the plaintiff the misdeeds of Pasulka, their counsel) to have been a tactic undertaken for the sole purpose of harassing the opposing party and hence sanctionable under section 128.5. We would therefore sustain the trial court's order, but for a procedural defect, which unfortunately requires us to remand this matter for further consideration.

## 2. *The Requirement of a Written Order With Specification of Grounds*

Section 128.5, subdivision (c) provides that "An order imposing expenses shall be in writing and shall recite in detail the conduct or circumstances

---

require this equitable action in superior court are explained in California Mechanics' Liens and Other Remedies (Cont.Ed.Bar 2d ed. 1988) § 4.51, page 228.

justifying the order." The reason for this requirement was explained in *Lavine* v. *Hospital of the Good Samaritan* (1985) 169 Cal.App.3d 1019 [215 Cal.Rptr. 708] as follows:

"The purpose of section 128.5's provision for a recitation of the facts justifying a sanctions order is to fulfill the 'rudiments' of due process required for governmental imposition of a penalty upon an attorney or party—both for due process' own, constitutional sake and to ensure that the power conferred by the statute will not be abused. [Citations.] Moreover, in some cases the court's recitation will be an invaluable aid to a reviewing court determining whether the trial court abused its discretion in awarding sanctions. [Citations.]" (*Id.* at p. 1029.)

 Where sanctions are imposed directly by the court, without benefit of motion from opposing counsel (see, e.g., *Lind* v. *Medevac, Inc.* (1990) 219 Cal.App.3d 516 [268 Cal.Rptr. 359]), we can understand that the grounds for same might in some cases be obscure, absent a recitation in the order. Where, as here, sanctions follow a detailed motion by opposing counsel, fully argued and considered in an open hearing, it appears that the due process reasons for a written statement of grounds will have been satisfied, and the omission of the statement should be subject to harmless error doctrine. Further, where, as here, the appellate court has combed the record to determine on its own whether a sound basis exists for imposition of sanctions, the justification of the rule in terms of assisting the appellate court in its review seems undermined. The appellate decision itself now constitutes an exhaustive statement of reasons justifying the sanctions, and therefore sending the matter back to the trial court for another hearing is unproductive.

However, all authority militates against use of the harmless error doctrine in review of an order which fails to set forth "in detail the conduct or circumstances justifying sanctions." (See *County of Imperial* v. *Farmer* (1988) 205 Cal.App.3d 479, 486 [252 Cal.Rptr. 382]; *Lavine* v. *Hospital of the Good Samaritan, supra,* 169 Cal.App.3d at p. 1029; *Fegles* v. *Kraft* (1985) 168 Cal.App.3d 812, 816 [214 Cal.Rptr. 380]; *Lieppman* v. *Lieber* (1986) 180 Cal.App.3d 914, 921 [225 Cal.Rptr. 845]; *Conservatorship of Durham* (1988) 205 Cal.App.3d 548, 552 [252 Cal.Rptr. 414].) Here the written order is devoid of any statement of its grounds. Even were we to find the oral statement sufficient in detail (which it probably is not) we would be unable to sustain the judgment. (See *Lieppman* v. *Lieber, supra,* 180 Cal.App.3d at pp. 920-21; *Jansen Associates, Inc.* v. *Codercard, Inc.* (1990) 218 Cal.App.3d 1166, 1171 [267 Cal.Rptr. 516] ["A trial judge's on-the-record oral recitation of reasons for imposing sanctions is insufficient."].)

We therefore adhere to what seems to be a well-established rule and remand the case for the fashioning of a proper order by the trial court,[6] even though were we free to do so we would classify this error as harmless and not warranting reversal. (See 9 Witkin, Cal. Procedure, *supra*, § 324 et seq., p. 334 et seq.)[7]

### 3. *We Reject Miscellaneous Other Points of Appeal*

(a) *Jurisdiction.* █ Plaintiff and appellant contends the court did not have jurisdiction to entertain the motion for sanctions because the case had been dismissed, relying on *Roski* v. *Superior Court* (1971) 17 Cal.App.3d 841 [95 Cal.Rptr. 312]. That case is inapposite, standing simply for the proposition that after a dismissal a court loses jurisdiction to entertain further proceedings (in that case an attempt to file a complaint in intervention after the initial complaint had been dismissed). A defendant has the right to seek costs after dismissal of the complaint (§ 1032; *Catello* v. *I.T.T. General Controls* (1984) 152 Cal.App.3d 1009 [200 Cal.Rptr. 4]), and attorney fees recoverable under statutory authorization are deemed an element of costs (*Woodward* v. *Bruner* (1951) 104 Cal.App.2d 83, 85 [230 P.2d 861].)

Plaintiff and appellant's reliance on the preclusion of obtaining attorney fees after dismissal under Civil Code section 1717, subdivision (b)(2) is also misguided. Such fee awards are based upon contractual provisions, and have no application to statutory authorization for fees, as contained in section 128.5.

(b) *Award to Attorney Not of Record.* █ Plaintiff and appellant contends the fee award was erroneous, or at least excessive, because the fees were incurred by Reed at a time when Peizer was not an attorney of record. The short answer to this contention is that there is neither authority nor reason to support it. Legal counsel is just as necessary—perhaps more

---

[6]In a circumstance such as this, remand might appear particularly useless. Having reviewed the facts in detail and found them sufficient to sustain a finding of bad faith harassing tactics under section 128.5, this court has established a principle of law which becomes "law of the case." (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 743, pp. 712-713.) Requiring the trial court judge now to set forth in his judgment that which we have already established makes little sense. However, we must note that we have now reviewed and detailed at some length the grounds upon which the trial court is warranted in ordering sanctions. The sanctions actually to be ordered remain a matter of discretion for the trial court. In light of our illumination of the grounds for sanction, and the fact that our reversal removes in its entirety the prior $5,000 order, the trial court may now impose either greater or lesser sanctions than it originally selected.

[7]We are aware of what appears to be a well-reasoned treatise in favor of applying harmless error doctrine to failure to abide by the specification of reasons requirement of section 128.5. We also know, however, that the examination of this issue in *Bullock* v. *Vultee* (Cal.App.) A047940, has been depublished by order of the Supreme Court dated April 18, 1991.

necessary—for the party who endeavors to represent himself, as it is for the person who has counsel of record. We certainly think it unwise to adopt a policy which would dissuade litigants from retaining attorneys to assist in lawsuits before the attorney appears with respect to filed documents. The only matters of concern are (1) whether the attorney was in fact retained, (2) whether the fees charged by the attorney were justified, and (3) whether the conduct of opposing attorney warrants sanctions.

(c) *Fees Not Paid.* ■ Plaintiff and appellant further objects to the fee award because, it is contended, there was no showing that Reed actually had paid the fees charged by Peizer. Again, the fault with this argument is that it has no legal authority or reason to support it. It is perhaps true that the payment of an attorney fee by a client may be some evidence that the fee was both due and reasonable. However, the fact that a fee was not paid is no evidence that it has not been earned and that the client is not obligated to pay it. No evidence was introduced in this case to suggest that the fees of Ms. Peizer were not warranted or that the services she rendered were not appropriate. Indeed, Pasulka's own statement that he had charged over $5,000 for his services lends some support to the dimension of Peizer's charges.

### CONCLUSION AND DISPOSITION

Because the trial court failed to state in its order the grounds for sanctions, the case is reversed and remanded. It is now incumbent upon the trial court to review the matter in light of this opinion and to issue a new judgment awarding such expenses as the judge may now find proper, including appropriate findings, or in the alternative to deny an award of fees. (See *Fegles* v. *Kraft, supra,* 168 Cal.App.3d at p. 817.) Each party shall bear its or his own costs.

We are reluctant to leave this case, however, without a parting observation of what we conceive to be a changing emphasis in the law. The trend is signaled, we believe, by the counsel contained in *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863 [254 Cal.Rptr. 336, 765 P.2d 498], where the court dissuaded the use of retaliatory litigation (malicious prosecution in that case) as a remedy for the frivolous lawsuit. It advised, instead "adoption of measures facilitating the speedy resolution of the initial lawsuit and authorizing the imposition of sanctions for frivolous or delaying conduct within that first action itself." (*Id.* at p. 873.) The First District of this Court of Appeal, in sanctioning a prominent San Francisco law firm for maintaining an action after it had been shown frivolous, lamented: "This problem of the filing of frivolous pleadings for improper purposes has increased to the point

that it has attracted the attention of academics and the courts." (*580 Folsom Associates* v. *Prometheus Development Co.* (1990) 223 Cal.App.3d 1, 27 [272 Cal.Rptr. 227].)

Perhaps the most instructive comment came from the Second District of our court: "It is perhaps time that the courts, both trial and appellate, begin to speak and react more forcefully with respect to cases such as this one [a frivolous and vexatious cross-complaint to an action seeking collection of a modest business debt]. Such an abuse of the legal system for no other purpose than to avoid paying a legitimate claim simply can no longer be tolerated. It is not fair to the opposing litigant who is victimized by such tactics and it is not fair to the greatly overworked judicial system itself and those citizens with legitimate disputes waiting patiently to use it. In those cases where such abuse is present, an award of substantial sanctions is proper." (*National Secretarial Service, Inc.* v. *Froehlich* (1989) 210 Cal.App.3d 510, 526, fn. omitted [258 Cal.Rptr. 506]; see also *Southern Christian Leadership Conference* v. *Al Malaikah Auditorium Co.* (1991) 230 Cal.App.3d 207, 227-228 [281 Cal.Rptr. 216].)

We concur. Where litigation, of questionable merit in its initiation, becomes clearly warrantless in its maintenance, it is the obligation of counsel to take charge and terminate the matter. It is unacceptable in these times of limited access to courts and accelerating cost of litigation to permit the continuance of frivolous actions simply because of the intransigence of a client. Indulging the best inferences possible to the attorney for plaintiff and appellant in this case, he did not monitor the practical evolution of the litigation, he allowed his client's ill-informed desires to govern what should have been professional decisions, he wasted his own time and his client's money, and most importantly, he unreasonably imposed burdens on the opposing party and the court system by forcing the expenditure of time and money on frivolous process.

Work, Acting P. J., and Nares, J., concurred.