Filed 4/11/25  Mondragon v. Let's Do Lunch CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RAFAEL MONDRAGON et al.,<br><br>        Plaintiffs and Appellants,<br><br>        v.<br><br>LET'S DO LUNCH, INC.,<br><br>        Defendant and Respondent. | B321440<br><br>(Los Angeles County Super. Ct. No. 20STCV34952) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

        Mahoney Law Group and Kevin Mahoney for Plaintiffs and Appellants.

Seyfarth Shaw, Michele J. Beilke, Julia Y. Trankiem and Blake E. Guerrero for Defendant and Respondent.

\* \* \* \* \* \*

A former employee sued his employer for wrongful termination and unfair competition.  In discovery, the former employee admitted, in contention interrogatories, that the employer did not violate any laws or public policy; the former employee thereafter failed to oppose the employer's summary judgment motion premised on those interrogatory responses. After granting summary judgment, the trial court imposed $123,299 in attorney fees as sanctions under Code of Civil Procedure section 128.5[1] because, based on his interrogatory responses, the former employee "maintained" his lawsuit "in bad faith without evidentiary support or factual basis."  Because the court did not abuse its discretion in imposing sanctions, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

Let's Do Lunch, Inc. (defendant) provides "perishable prepared food for schools' distributors, private-label, and retail customers in California and throughout the United States." Raphael Mondragon (Mondragon) was hired as a forklift operator at defendant's Los Angeles-based warehouse in November 2018. He was terminated less than six months later, in April 2019, for initiating an aggressive verbal confrontation with a co-worker.

---

[1]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

## II. Procedural Background

### A. *Complaint*

In September 2020, Mondragon sued defendant. In this lawsuit, Mondragon alleged that he was terminated in a "retaliatory fashion" for complaining about (1) defendant's "safety practices" (namely, that his co-workers "improperly stacked pallets" in his loading area and "enter[ed] into the path of his forklift") and (2) his "missing compensation" (namely, that defendant reduced his hours and did not pay him for the time he spent discussing his reduced hours at a human resources office). Based on these allegations, Mondragon asserted causes of action for (1) wrongful termination in violation of public policy, and (2) violation of California's Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200). He was represented by Justin Lo and Berkeh Alemzadeh, who are lawyers with the law firm Work Lawyers, PC (collectively, counsel).[2]

### B. *Contention interrogatory responses*

Among other discovery, defendant propounded contention interrogatories. Two of them are pertinent here.

In the first, defendant asked whether Mondragon "contend[ed] that any PERSON involved in the INCIDENT"—which was tied to the "allegations in the operative complaint"—"violated any statute, ordinance or regulation" and "that [such a] violation was a legal (proximate) cause of the INCIDENT."

---

[2]     The law firm who is representing Mondragon and his counsel in this instant appeal is also the law firm who represented Mondragon in a separate lawsuit he filed against defendant alleging wage-and-hour-related claims. We have issued a separate opinion today reversing summary judgment for defendant in that other lawsuit.

3

Mondragon served a verified response on October 22, 2021, raising several objections but answering, "No."

In the second, defendant asked whether Mondragon "contend[ed] that [defendant] took any ADVERSE EMPLOYMENT ACTION against [him] in violation of public policy." Mondragon served a verified response on October 22, 2021, raising several objections but answering, "Not to [my] knowledge."

### C. *Summary judgment*

Within two weeks of receiving Mondragon's responses to the contention interrogatories, defendant moved for summary judgment based on those responses as well as having a legitimate business reason for terminating Mondragon.

Mondragon elected not to file an opposition to the summary judgment motion. He nevertheless pressed forward in preparing for the firm February 2022 trial date by twice noticing the deposition of defendant's person most qualified, engaging in extensive meet and confers with defendant over that deposition, and serving written discovery.

On January 20, 2022, the trial court granted defendant's summary judgment motion, noting it was "unopposed" and "well-taken."[3]

---

[3] Within weeks of this order, Mondragon—using the other law firm who represented in him in the wage and hour lawsuit—again sued defendant for retaliation based on the same allegations that Mondragon was terminated for complaining about "unsafe forklift operating practices." Mondragon dismissed that retaliation action a few months later.

4

### D. *Sanctions*

While its summary judgment motion was still pending, defendant wrote a letter to Mondragon's counsel on January 10, 2022, demanding the dismissal of the pending lawsuit in light of Mondragon's responses to the contention interrogatories and lack of opposition to the summary judgment motion. The letter warned that, absent dismissal, defendant would seek "attorneys' fees and sanctions against you, your firm, and [Mondragon]." Counsel never responded to the letter.

After summary judgment was granted, defendant filed a motion for sanctions under section 128.5 in which it sought $174,056 in attorney fees. Following further briefing and two hearings, the trial court granted the motion for sanctions. At the second hearing, the court admonished Mondragon's counsel that when counsel "prepared" the interrogatory responses, "which essentially meant [Mondragon] no longer had a case," they "should have realized that the case was no longer justified and dismissed it" on their own without the court "hav[ing] to hold the hand of counsel."

In the judgment, the trial court ordered "Mondragon and his counsel" to pay sanctions to defendant in the amount of $123,299 "as the reasonable amount of . . . attorneys' fees" defendant incurred after Mondragon served his interrogatory responses.[4] The court expressly found that the lawsuit "was maintained in bad faith without evidentiary support or factual basis" because (1) Mondragon "admitted he had no basis for his claims when he provided" the interrogatory responses stating "there was no public policy violation" by defendant, and (2)

---

[4] The court also awarded defendant $14,777.91 in costs, but that award is not challenged on appeal.

5

Mondragon and his counsel "continued to litigate this matter until it was dismissed" on summary judgment.

### E. *Appeal*

Mondragon and his counsel timely filed this appeal.

## DISCUSSION

Mondragon and his counsel assert that the trial court erred in imposing sanctions against them.

## I. Governing Law

A trial court may impose "reasonable" "attorney's fees" as sanctions against "a party, the party's attorney, or both" if (1) the party or attorney engaged in "actions or tactics" (2) that were "frivolous or solely intended to cause unnecessary delay" and (3) were "made in bad faith." (§ 128.5, subd. (a); *Zarate v. McDaniel* (2023) 97 Cal.App.5th 484, 488; *Shelton v. Rancho Mortgage & Investment Corp.* (2002) 94 Cal.App.4th 1337, 1346.)

"Actions or tactics" include the decision to maintain a lawsuit. (§ 128.5, subd. (b)(1) [defined as "includ[ing], but . . . not limited to, . . . making or opposing of motions or the filing and service of a complaint, cross-complaint, answer, or other responsive pleading"].)

Whether an action or tactic is "frivolous" is adjudged objectively by examining whether "any reasonable attorney would agree" that the matter "is totally and completely without merit." (*Levy v. Blum* (2001) 92 Cal.App.4th 625, 635 (*Levy*); *Brubaker v. Strum* (2023) 87 Cal.App.5th 497, 511; *City of Rocklin v. Legacy Family Adventures-Rocklin, LLC* (2022) 86 Cal.App.5th 713, 726 (*City of Rocklin*); *Rudisill v. California Coastal Com.* (2019) 35 Cal.App.5th 1062, 1070; *In re Marriage of Sahafzadeh-Taeb & Taeb* (2019) 39 Cal.App.5th 124, 135 (*Taeb*).)

6

Whether an action or tactic is made in "bad faith" turns on subjective intent. (*Levy*, *supra*, 92 Cal.App.4th at pp. 633, 635; *Taeb*, *supra*, 39 Cal.App.5th at pp. 128, 134-135; see *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649 (*Flaherty*).) However, a court may infer bad faith where an action or tactic is frivolous and a party or counsel nevertheless persisted with it. (*Dolan v. Buena Engineers, Inc.* (1994) 24 Cal.App.4th 1500, 1505; *West Coast Development v. Reed* (1992) 2 Cal.App.4th 693, 702 (*West Coast*).) Proof of "evil motive" is not required. (*Taeb*, at p. 138.)

Because a trial court has "wide discretion" whether to impose sanctions under section 128.5, we review solely for an abuse of that discretion. (*People v. Edwards* (2023) 88 Cal.App.5th 1259, 1266; *City of Rocklin*, *supra*, 86 Cal.App.5th at p. 727; *Alfaro v. Waterhouse Management Corp.* (2022) 82 Cal.App.5th 26, 36-37.) In undertaking this task, we review any subsidiary factual findings for substantial evidence and any legal conclusions de novo. (*Edwards*, at p. 1267.)

## II.    Analysis

The trial court did not abuse its discretion in assessing sanctions against Mondragon and his counsel corresponding to the amount of attorney fees defendant incurred after Mondragon served his interrogatory responses admitting that the lawsuit had no legal or factual basis.

Mondragon's and his counsel's conduct in maintaining the lawsuit constitutes an "action or tactic." (See *West Coast*, *supra*, 2 Cal.App.4th at p. 704 ["[w]hile the case may in fact have been inconsequential, its filing and maintenance in the superior court created consequence," including opposing counsel having to prepare and travel for trial].)

7

The maintenance of the lawsuit was "frivolous." A claim is frivolous if there is "[a] complete lack of evidence to substantiate" any of its elements. (*580 Folsom Associates v. Prometheus Development Co.* (1990) 223 Cal.App.3d 1, 22 (*580 Folsom*); *Frank Annino & Sons Construction, Inc. v. McArthur Restaurants, Inc.* (1989) 215 Cal.App.3d 353, 359.) Mondragon's claims for wrongful termination in violation of public policy and for unfair competition each require proof that a constitutional or statutory provision has been violated. (*Bruni v. The Edward Thomas Hospitality Corp.* (2021) 64 Cal.App.5th 247, 257 [wrongful termination claim must be "'tethered to fundamental policies that are delineated in constitutional or statutory provisions,'" italics omitted]; *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 889-890 [same]; *Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1136 [UCL claim based on "unlawful" conduct requires violation of statute or regulation]; *Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 187 [UCL claim based on "unfair" conduct requires "an incipient violation of an antitrust law, or [conduct that] violates the policy or spirit of one of those laws"]; *Drum v. San Fernando Valley Bar Assn.* (2010) 182 Cal.App.4th 247, 254-255 [applying *Cal-Tech*'s rule in cases, like this one, based on harm to competitors rather than to consumers]; see also *Becerra v. McClatchy Co.* (2021) 69 Cal.App.5th 913, 951 [where UCL claim is derivative of underlying violation, it stands or falls with underlying claim].) By admitting in the sworn contention interrogatories that no statute, ordinance, regulation, or public policy was violated during the "incident" underlying Mondragon's complaint, Mondragon admitted to a "complete lack of evidence" as to a critical element of each of his two claims.

Mondragon's and his counsel's maintenance of the lawsuit was also done in "bad faith." Substantial evidence supports the trial court's implied finding of subjective bad faith from the fact that Mondragon and his counsel persisted in a lawsuit that was not only frivolous, but also that they *knew*—by virtue of their interrogatory answers—to be frivolous. (*Childs v. PaineWebber Incorporated* (1994) 29 Cal.App.4th 982, 997 (*Childs*) ["subjective bad faith may be inferred from the prosecution of a frivolous action"]; cf. *580 Folsom*, *supra,* 223 Cal.App.3d at p. 26 ["at some point it had to become clear . . . that [counsel's] clients had no evidence to support the factual allegations" yet counsel "deliberately caused the trial court hours of work"].)

## III. Counter-Arguments

Mondragon and his counsel level a barrage of attacks at the trial court's sanctions ruling. We have grouped their arguments into three categories.

### A. *Arguments about procedure*

Mondragon and his counsel raise three procedure-focused arguments.

First, they argue that the trial court was barred from issuing sanctions because defendant did not comply with section 128.5's 21-day safe harbor provision. (§ 128.5, subd. (f)(1)(B).) Mondragon and his counsel forfeited this procedural objection by not raising it before the trial court. (*City of Rocklin*, *supra*, 86 Cal.App.5th at p. 735 [forfeited]; *Levine v. Berschneider* (2020) 56 Cal.App.5th 916, 923 [waived].) Further, the safe harbor is designed to give a party the opportunity to withdraw or correct a motion or pleading soon after its filing (e.g., *Changsha Metro Group Co., Ltd. v. Xufeng* (2020) 57 Cal.App.5th 1, 8); it does not apply in other contexts, such as when the action or tactic at issue

is *maintenance* of a frivolous lawsuit months after its filing.  (See *Taeb*, *supra*, 39 Cal.App.5th at p. 147 [safe harbor does not apply when sanctioned party did not correct trial court's misapprehension of party's readiness for trial].)

Second, they argue that defendant should be barred from obtaining sanctions because it did not act diligently.  (§ 128.5, subd. (f)(1) [trial court "shall consider whether [the] party seeking sanctions has exercised due diligence"].)  We disagree.  Defendant filed its summary judgment motion only 14 days after the fatal discovery responses, thereby allowing Mondragon and his counsel an opportunity to oppose that motion with any contrary evidence.  Defendant then filed its sanctions motion only 18 days after the unopposed summary judgment motion was granted.  Defendant was sufficiently diligent.

Third, Mondragon and his counsel argue that the trial court's sanctions order is deficient.  Section 128.5 requires any order to "recite in detail the action or tactic or circumstances justifying the order."  (§ 128.5, subd. (c); *Childs*, *supra*, 29 Cal.App.4th at p. 996 ["no more is required than a written factual recital, with reasonable specificity, of the circumstances that led the trial court to find the conduct before it sanctionable"].)  While concise, the order here met this standard because it identified the action or tactic the court found to be frivolous and done in bad faith—namely, "maintain[ing]" the lawsuit "without evidentiary support or factual basis."  (*Harris v. Rudin* (2002) 95 Cal.App.4th 1332, 1344-1345 [rejecting identical argument where court's order was "sufficient to apprise [parties] and this reviewing court of the reasons why sanctions were imposed"]; *Carpenter v. Jack in the Box Corp.* (2007) 151 Cal.App.4th 454, 470 ["The court's statement of reasons, although brief . . . met th[e] standard"].)

10

**B.** *Arguments about the merits*

Mondragon and his counsel make three arguments challenging the merits of the sanctions ruling.

First, they argue that the trial court erred in finding Mondragon's claims to be meritless because his contention interrogatory responses were not binding admissions and because other evidence adduced during discovery (such as Mondragon's deposition testimony) contradicted those responses and established triable issues of fact as to whether defendant violated a statute or public policy. To be sure, contention interrogatory responses are not binding judicial admissions; they are evidentiary admissions that may be contradicted by other evidence. (*Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1425, fn. 21; *Phillips v. Cooper Laboratories* (1989) 215 Cal.App.3d 1648, 1661 ["a party may present evidence [at trial] at variance to prior answers to interrogatories"].) But Mondragon never contradicted his contention interrogatory responses because he never filed an opposition to the summary judgment motion. His attempt to effectively litigate that motion before this court—after forgoing the opportunity to do so before the trial court—is too little, too late.

Second, Mondragon and his counsel argue that *defendant's* conduct in initiating settlement discussions and in continuing to prepare for the then-upcoming trial date somehow shows that *Mondragon's* lawsuit was not frivolous. It does not. Litigants mitigate risk by entertaining settlement even in cases that lack merit, and litigants have to defend against meritless claims that go to trial. Thus, defendant's conduct says nothing about whether *Mondragon's* claims were frivolous or, more to the point,

11

whether Mondragon and his counsel *knew* those claims were frivolous.

Third, Mondragon and his counsel argue that there is no evidence of subjective bad faith because Mondragon's counsel filed a declaration stating that he did not "believe the claims . . . were frivolous or otherwise lacking in merit" and that his only failing was not adequately supervising the associate who assisted Mondragon in preparing the responses to the contention interrogatories. The trial court acted within its discretion to give less weight to counsel's explanations, and we must decline the invitation to reweigh the evidence supporting the court's bad faith finding. (*Estate of Ivey* (1994) 22 Cal.App.4th 873, 881 [appellate court "may not reweigh the evidence" when reviewing a sanctions award].)

### C.    *Arguments about the scope of the award*

Mondragon and his counsel raise three arguments challenging the breadth and amount of the sanctions award.

First, they argue that the trial court erred in imposing sanctions against Mondragon *and his counsel* because lawyers can be sanctioned only if they are "solely responsible" for the sanctioned conduct. We reject this argument. Section 128.5 explicitly provides that sanctions may be imposed against "a party, the party's attorney, or both." (§ 128.5, subd. (a).) The statute contains no proviso that precludes liability against counsel (or a party-litigant) unless each is "solely responsible" for the sanctionable conduct. What is more, the record supports the trial court's implicit findings that Mondragon and his counsel worked in tandem in preparing the responses to the contention interrogatories (because they contain legal objections but were personally verified by Mondragon), and that the decision to

persist in the lawsuit after filing those responses was a joint decision (because counsel admitted that he "advised [Mondragon]" as to how far *this* lawsuit should be maintained). (Cf. *Wong v. Davidian* (1988) 206 Cal.App.3d 264, 272 [where there is uncertainty about whether counsel and the client worked in tandem and privilege issues preclude further inquiry, the "better practice" may be to impose sanctions against the client and leave it to the client and counsel to re-allocate liability].)[5]

Second, Mondragon and his counsel argue that the trial court should have considered Mondragon's inability to pay the $123,299 sanctions amount. But ability to pay is not a factor under section 128.5, as it is under other statutes; we cannot ignore this distinction. (Cf., e.g., Fam. Code, § 271; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 827-828 [ability to pay is relevant to Family Code section 271]; see generally *Interinsurance Exchange v. Spectrum Investment Corp.* (1989) 209 Cal.App.3d 1243, 1258 ["Where the Legislature uses different language in similar statutory provisions, it is presumed it did so advertently and had a different legislative intent with regard to each provision"].) The trial court's reliance on the default mechanism of a lodestar approach to calculate the amount of sanctions was appropriate. (Cf. *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1134-1136 [lodestar is approved method

---

**5** The advancement of this challenge to the imposition of sanctions against *counsel* does not provide a basis for disqualification of Mondragon's counsel in this appeal, particularly because it is one based on statutory language and case law (rather than any factual dispute) and because all of counsel's remaining challenges to the sanctions award would exonerate counsel and client alike.

13

for calculating amount of reasonable fees]; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [same].)

Third and lastly, they argue that the trial court should have limited the amount of sanctions to the attorney fees defendant incurred after sending the sanctions demand letter on January 10, 2022, rather than after the date Mondragon sent his interrogatory responses on October 22, 2021. This argument relies on a misreading of the statute, which allows the court to impose attorney fees as a sanction when those fees were incurred "as a result" of the frivolous and bad faith action or tactic. (§ 128.5, subds. (a) & (f)(2).) The action or tactic here was Mondragon's and his counsel's continued maintenance of the lawsuit after serving the interrogatory responses acknowledging their awareness that the claims had no factual or legal foundation.

## DISPOSITION

The judgment is affirmed. Defendant is entitled to its costs on appeal.[6]

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.

HOFFSTADT

---

[6] Defendant's request for attorney fees on appeal is denied. (See *Flaherty*, *supra*, 31 Cal.3d at p. 650 ["'[T]he borderline between a frivolous appeal and one which simply has no merit is vague indeed'"].)

14

I concur:

_____, J.
MOOR

Rafael Mondragon et al. v. Let's Do Lunch, Inc.
B321440


BAKER, J., Concurring



   With two exceptions, I join the opinion for the court.  First, because I agree plaintiff and appellant's Code of Civil Procedure section 128.5 safe harbor argument is forfeited, I find it unnecessary to join, and do not join, the observation that the statutory safe harbor does not apply when the action or tactic is maintenance of a frivolous lawsuit.  Second, I do not join footnote 5 in its entirety.



       BAKER, J.